No. 01-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 177

ALDRICH & CO.,

        Plaintiff and Respondent,

    v.

TANNER ELLIS and RHONDA M. ELLIS,
d/b/a YELLOWSTONE LOG WORKS,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            Gregory O. Morgan, Gregory O. Morgan, P.C., Bozeman, Montana

        For Respondent:

            Karl Knuchel, Karl Knuchel, P.C., Livingston, Montana

        Submitted on Briefs:  December 20, 2001

                Decided:  August 8, 2002

Filed:

                          _____
                                    Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Aldrich & Company ("Aldrich") brought this action in the Montana Sixth Judicial District Court, Park County, seeking a judgment against Tanner Ellis and Rhonda M. Ellis, d/b/a/ Yellowstone Log Works ("the Ellises"), on accounts owing. Subsequently, Aldrich filed a motion for summary judgment. Thereafter, the Ellises filed a motion to amend the pleadings. The District Court granted Aldrich partial summary judgment and denied the Ellises' motion to amend the pleadings. Following a hearing to determine damages, the District Court granted Aldrich judgment against the Ellises in the amount of $81,914.20. The Ellises appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶2    We restate the issues presented on appeal as follows:

¶3    1. Did the District Court err in concluding that Aldrich was entitled to charge and collect a late payment charge from the Ellises without a written agreement pursuant to § 31-1-501, MCA?

¶4    2. Did the District Court err in concluding that Aldrich's statements of account comply with the requirements of § 31-1-502, MCA?

¶5    3. Did the District Court err in denying Ellises' motion to amend the pleadings?

BACKGROUND

¶6    Aldrich is a lumber company with its principal place of business located in Billings, Montana. It has a branch location in Livingston, Montana. The Ellises are residents of Livingston and do business therein as Yellowstone Log Works.

¶7    In November 1996, Tanner Ellis filled out Aldrich's commercial credit application, as guarantor, in the name of Yellowstone Log Works. The credit application was approved by Aldrich on November 30, 1996. Subsequently, the Ellises opened three accounts and purchased materials from Aldrich on numerous occasions.

2

¶8      On August 13, 1999, Aldrich filed a complaint in the District Court seeking judgment against the Ellises for the unpaid costs of materials provided to them in the amount of $67,370.94, with interest accruing thereon at the rate of 18% per annum.  As litigation progressed, the District Court issued a Scheduling Order on October 5, 1999, which provided that all amendments to the pleadings must be filed by October 25, 1999, and all motions for summary judgment must be filed by February 4, 2000.  Subsequently, Aldrich moved for summary judgment on January 3, 2001, alleging that a contractual relationship existed between the parties, and the Ellises breached that contractual relationship by failing to pay for the materials provided to them.  The District Court held a hearing on Aldrich's motion on February 7, 2001.  At the hearing, the Ellises moved to amend the pleadings to add a claim of usury.  The court denied the motion.

¶9      On February 9, 2001, the Ellises filed a brief in opposition to summary judgment and a motion to amend the pleadings.  Therein, the Ellises claimed Aldrich was not entitled to summary judgment because there was no written agreement between the parties providing for late payment charges as required by § 31-1-501, MCA.  In addition, the Ellises alleged that Aldrich's statements of account did not comply with the requirements of § 31-1-502(1)(a), (e), and (f), MCA.   The Ellises therefore argued Aldrich's motion for summary judgment should be denied and they should be allowed to amend the pleadings to add a claim for recovery of usurious interest pursuant to § 31-1-108, MCA.  In their motion to amend the pleadings, the Ellises alleged Aldrich would not be prejudiced if they were permitted to amend the pleadings since a trial date had not been set and neither party had conducted discovery.

¶10     The District Court entered an Order on February 20, 2001, denying the Ellises' motion to amend the pleadings and granting Aldrich partial summary judgment.  The court concluded that the Ellises' motion to amend the pleadings was untimely pursuant to its Scheduling Order.

3

Additionally, the court concluded that a contractual relationship existed between the parties and the Ellises had breached that relationship by failing to pay amounts owing. The court further concluded that genuine issues of fact existed regarding damages.

¶11 The court held a hearing to determine damages on April 23, 2001. Thereafter, the court issued an Explanatory Comment Regarding Interest Rate on May 3, 2001, concluding that Aldrich was entitled to charge the Ellises 1½% interest per month on all amounts due and owing over thirty days. On the same day, the District Court granted Aldrich judgment against the Ellises in the amount of $81,914.20, including 18% interest per annum on the principal amount. The Ellises appeal.

## STANDARD OF REVIEW

¶12 We review a district court's summary judgment ruling de novo and employ the same Rule 56, M.R.Civ.P., evaluation as applied by the district court. *Andrews v. Plum Creek Manufacturing*, 2001 MT 94, ¶ 5, 305 Mont. 194, ¶ 5, 27 P.3d 426, ¶ 5. Pursuant to Rule 56, M.R.Civ.P., we apply the following inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903 (citations omitted). We review a district court's denial of a motion to amend the pleadings for an abuse of discretion.

4

*See Loomis v. Luraski*, 2001 MT 223, ¶ 24, 306 Mont. 478, ¶ 24, 36 P.3d 862, ¶ 24 (citation omitted).

DISCUSSION

ISSUE ONE

¶13 Did the District Court err in concluding that Aldrich was entitled to charge and collect a late payment charge from the Ellises without a written agreement pursuant to § 31-1-501, MCA?

¶14 The Ellises argue that a retail seller who charges 1½% interest per month on delinquent accounts must have a written agreement with the retail buyer to do so pursuant to § 31-1-501(1), MCA. Specifically, the Ellises contend that reference to § 31-1-202, MCA, in § 31-1-501(1), MCA, refers to the definition of "retail seller" stated in § 31-1-202(1)(p), MCA, which requires that a retail seller have a written agreement with the retail buyer. The Ellises assert that a written agreement does not exist between the parties, and thus Aldrich is not entitled to charge and collect a late payment fee.

¶15 Aldrich maintains the District Court correctly determined that a written agreement is not required to charge and collect a late payment charge on any accounts thirty days past due in the retail sales arena when the sale is not anticipated to be on an installment basis. Aldrich asserts that the Ellises are misconstruing and misinterpreting the meaning of the statutory language in § 31-1-501, MCA, and reference therein to § 31-1-202, MCA. Namely, Aldrich alleges that reference to § 31-1-202, MCA, in § 31-1-501(1), MCA, pertains solely to the definition of "goods" as defined by § 31-1-202(1)(d), MCA. Aldrich further points out that § 31-1-202(1)(p), MCA, defines "retail seller" as "a person who sells goods or furnishes services to a retail buyer in a written retail installment contract or written retail installment transaction." However, § 31-1-501(3), MCA, expressly states that the provisions of § 31-1-501, MCA, do not apply to retail installment contracts or retail charge account

5

agreements regulated under Title 31, chapter 1, part 2. Aldrich thus claims § 31-1-202(1)(p), MCA, is inapplicable. We agree.

¶16 Section 31-1-501, MCA, provides:

**Late payment charges -- accounts receivable for merchandise sold at retail.** (1) Notwithstanding 31-1-106 or 31-1-107, a person who sells *goods, as defined in 31-1-202*, at retail to a retail buyer who promises to pay for such goods upon presentation of the bill therefor, may charge and collect a late payment charge not greater than 1½% per month on all money due on all accounts from 30 days after the date on which the obligation of the buyer to pay is incurred.

(2) The late payment charge provided in this section may be charged only if at the time the obligation was incurred the seller did not intend to extend any credit beyond 30 days and any late payment of the obligation was unintended.

(3) The provisions of this section *do not apply* to money due for intangible services, for services regulated by the public service commission, for real property, for health care services, or for *retail installment sales contracts or retail charge account agreements regulated under Title 31, chapter 1, part 2*. [Emphasis added.]

¶17 In interpreting a statute, we will "ascertain and declare what is in terms or in substance contained therein," and we will not "insert what has been omitted" or "omit what has been inserted." Section 1-2-101, MCA. Therefore, we will first look to the plain meaning of the words contained in the statute. *See Gallatin County v. Montana Eighteenth Judicial District Court* (1997), 281 Mont. 33, 40, 930 P.2d 680, 685 (citation omitted). "In the search for plain meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning.'" *See Gallatin County*, 281 Mont. at 40, 930 P.2d at 685 (quoting *In re Matter of McCabe* (1975), 168 Mont. 334, 339, 544 P.2d 825, 828). If the language is clear and unambiguous, we will not apply other rules of statutory construction. *See Clarke v. Massey* (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088.

¶18 Upon reviewing the plain meaning of the language contained in § 31-1-501, MCA, we conclude that reference to § 31-1-202, MCA, in § 31-1-501(1), MCA, clearly pertains to the

6

definition of "goods" provided by § 31-1-202(1)(d), MCA. Further, to interpret § 31-1-501(1), MCA, as incorporating the definition of "retail seller" stated in § 31-1-202(1)(p), MCA, would require omitting the provisions of § 31-1-501(3), MCA, which provide that § 31-1-501, MCA, does not apply to "retail installment sales contracts or retail charge account agreements regulated under Title 31, chapter 1, part 2." Consequently, the definition stated in § 31-1-202(1)(p), MCA, is inapplicable in interpreting § 31-1-501, MCA, as such definition incorporates the requirement of the existence of a "retail installment contract or written retail installment transaction." Accordingly, we hold that the District Court did not err in determining that § 31-1-501, MCA, does not require "a contract in the retail sales arena where the sale is not anticipated to be on an installment basis" since the plain meaning of the language contained in § 31-1-501, MCA, does not provide such requirement. We therefore affirm the District Court's interpretation of § 31-1-501, MCA.

ISSUE TWO

¶19    Did the District Court err in concluding that Aldrich's statements of account comply with § 31-1-502, MCA?

¶20    The Ellises contend that Aldrich's statements of account fail to satisfy the requirements of § 31-1-502(1)(a), (e), and (f), MCA. First, the Ellises claim the statements fail to state that a late payment charge will be charged beginning thirty days from the date of purchase in compliance with § 31-1-502(1)(a), MCA. Next, the Ellises assert that the statements fail to state the interest being charged is simple interest in compliance with § 31-1-502(1)(e), MCA. Lastly, the Ellises maintain the statements fail to provide a legend stating that the buyer may at any time pay the total unpaid balance pursuant to § 31-1-502(1)(f), MCA.

¶21    In response, Aldrich asserts it provided the Ellises statements on a monthly basis in compliance with the requirements of § 31-1-502(1)(a), (e), and (f), MCA. First, Aldrich contends its

7

statements comply with § 31-1-502(1)(a), MCA, since the statements are computer generated and do not begin computing interest on purchases until thirty days from the date of purchase. Secondly, Aldrich claims the statements recite that past due accounts are subject to an annual percentage rate of 18%, which is calculated as simple interest through its computer billing system pursuant to the requirements of § 31-1-502(1)(e), MCA. Lastly, Aldrich alleges that "[i]t is obvious and anticipated" from the language of the statements that the buyer may and should pay the total unpaid balance in accordance with § 31-1-502(1)(f), MCA.

¶22 Section 31-1-502, MCA, states:

**Periodic statement to be furnished to debtor.**
(1) A seller may charge the late payment charge provided for in 31-1-501 *only* if he promptly supplies the buyer with a statement as of the end of each monthly period, or other regular period agreed upon by the seller and the buyer, in which there is any unpaid balance. Such statement *shall* recite the following:

(a) the percentage amount of the late payment charge that will be charged *beginning 30 days after the obligation is incurred*;

(b) the unpaid balance at the beginning or end of the period;

(c) an identification of any amounts debited to the buyer's account during the period;

(d) the payments made by the buyer to the seller during the period;

(e) the amount of the late payment charge and also the percentage *annual simple interest* equivalent of such amount; and

(f) a *legend to the effect that the buyer may at any time pay the total unpaid balance.*

(2) The items need not be stated in the sequence or order set forth in subsection (1). Additional items may be included to explain the computations made in determining the amount to be paid by the buyer. [Emphasis added.]

¶23 A review of the plain meaning of the words contained in § 31-1-502(1), MCA, provides that the seller is mandatorily required to set forth the provisions listed in § 31-1-502(1)(a)-(f), MCA, in its monthly statements supplied to the buyer. Thus, if the statements Aldrich submitted to the Ellises

8

fail to state any of the items listed within § 31-1-502(1)(a)-(f), MCA, it cannot charge a late payment fee of 1½% per month provided for in § 31-1-501, MCA, pursuant to § 31-1-502(1), MCA. After reviewing Aldrich's statements of account submitted into evidence, we conclude that the statements do not comply with the requirements of § 31-1-502(1)(a), (e), and (f), MCA.

¶24 Specifically, we conclude that the statements fail to state that a late payment charge will be incurred thirty days after purchase as required by § 31-1-502(1)(a), MCA. Instead, the statements provide that:

> Payable in full 10[th] of the month following date of purchase, past due 11[th] of month.
>
> Past due accounts are subject to a **FINANCE CHARGE** of **1½% per month** of unpaid balance or an **ANNUAL PERCENTAGE RATE OF 18% (OR A MINIMUM FINANCE OF $0.50).**

Therefore, the terms of Aldrich's statement reflect that a late payment charge may actually be incurred prior to the expiration of the thirty day grace period provided by § 31-1-502(1)(a), MCA. By way of example only, a charge incurred on December 22 would be past due on January 11, less than thirty days after the charge was incurred, pursuant to the terms of Aldrich's statement.

¶25 In addition, we conclude that the statements fail to state the interest charged is simple interest pursuant to § 31-1-502(1)(e), MCA. Furthermore, we conclude that the statements fail to comply with § 31-1-502(1)(f), MCA, stating that the buyer may at any time pay the total unpaid balance. Consequently, we hold the District Court erred when it concluded that Aldrich's statements of account comply with § 31-1-502, MCA. Accordingly, we reverse the District Court's grant of partial summary judgment to Aldrich and remand this matter to the District Court for determination of the amounts due and owing to Aldrich by the Ellises.

ISSUE THREE

9

¶26    Did the District Court err in denying Ellises' motion to amend the pleadings?

¶27    We have repeatedly held that leave to amend should be freely given when justice so requires pursuant to Rule 15(a), M.R.Civ.P., unless the moving party is guilty of undue delay, bad faith, or dilatory motive. *See Loomis*, ¶ 41 (citations omitted). Here, discovery had not been conducted and a trial date was not set. Further, we note that the District Court did not strictly comply with its Scheduling Order since it permitted Aldrich to file a motion for summary judgment approximately eleven months after the date it specified therein for filing such motions. Accordingly, in light of the District Court permitting Aldrich to file an untimely summary judgment motion, we conclude that it abused its discretion when it denied the Ellises' motion to amend the pleadings.

¶28    Moreover, we point out that our reversal and remand of a matter opens anew all matters not settled by such decision. *See Story v. City of Bozeman* (1993), 259 Mont. 207, 230, 856 P.2d 202, 216 (citing *Mattock v. Goughner* (1893), 13 Mont. 300, 301, 34 P. 36, 36 and *Zavarelli v. Might* (1989), 239 Mont. 120, 125-126, 779 P.2d 489, 493). Therefore, in light of our determination that Aldrich's statements do not comply with the requirements of § 31-1-502, MCA, and remand, we conclude that the Ellises should be permitted to amend the pleadings and add a claim of usury.

¶29    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER

10

Justice Jim Rice concurring in part and dissenting in part.

¶30    I concur with the Court's holdings on Issues One and Two, but dissent from the Court's holding on Issue Three.

¶31    The Court in Issue Three reverses the District Court's denial of the Ellises' motion to amend their pleadings, which Ellises had requested 15 months after the amendment deadline, and permits them to add a new claim to the matter. I believe the Court has erred in so doing.

¶32    We review a district court's denial of a party's motion for leave to amend the pleadings to determine whether the district court abused its discretion. *Trout v. Bennett* (1992), 252 Mont. 416, 830 P.2d 81. The district court is justified in denying a motion to amend for reasons "such as undue delay." *Lindey's v. Professional Consultants* (1990), 244 Mont. 238, 242, 797 P.2d 920, 923.

¶33    The District Court noted the Ellises' substantial delay in deciding the issue:

> The defendant[s] moved to amend the pleadings more than fifteen months after the time for amendments had passed. No reason was given why the defendants could not have complied with the scheduling order or why they waited until the day that the motion for summary judgment was being heard to file their motion to amend the pleadings. The defendant[s']motion to amend is untimely and is DENIED. [Capitalization in original.]

I find no abuse of discretion in the District Court's denial on the grounds of untimeliness here, especially in light of the Ellises' failure to offer any justification for the delay.

¶34    This Court has also ruled that "[a]n opportunity to amend a pleading is not appropriate . . . when the party opposing the amendment would incur substantial prejudice as a result of the amendment." *Peuse v. Malkuch* (1996), 275 Mont. 221, 227, 911 P.2d 1153, 1156. As here, the defendants in *Peuse* moved to amend their pleadings after the plaintiff had moved for summary judgment. Noting the procedural posture of the case, and the defendants' delay, this Court held:

11

> If the amendments were allowed after the motion for summary judgment, Peuse would be unduly prejudiced since [Peuse's] motion was based on the original pleadings which remained unchanged for almost two years. Litigants should be allowed to change legal theories after a motion for summary judgment has been filed only in extraordinary cases. Therefore, the District Court was within its discretion in denying the [defendants] leave to amend their answer, and we affirm the District Court's order.

*Peuse*, 275 Mont. at 228, 911 P.2d at 1157.

¶35 The same result should be reached here. Although this matter is no longer before the District Court on a summary judgment motion, Aldrich will nonetheless be unduly prejudiced by reversal of the District Court on this issue. Pursuant to the Court's holding on Issue Two, this matter is being remanded for a recalculation of the amounts owing based upon claims which have already been litigated in the District Court and finally resolved by this Court on appeal. However, by allowing the Ellises to add a new claim and, presumably, for Aldrich to amend its pleadings to assert any defenses, the Court is re-opening the litigation, not simply to matters not settled by our decision, as it claims, but to a new claim not previously raised in the litigation. Thus, the Court is subjecting Aldrich to a claim which was previously and properly excluded from the proceedings. Re-opening the litigation for a new claim at this point, when the District Court did not abuse its discretion in previously denying the request, imposes substantial prejudice upon Aldrich.

¶36 Finding substantial prejudice to Aldrich, and no abuse of discretion that would justify reversal of the District Court's denial of the motion to amend, I dissent from the Court's holding on Issue Three.

/S/ JIM RICE

12