No. 88-598

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

DAVID C. MOGAN,

        Plaintiff and Appellant,

   -vs-

CITY OF HARLEM,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Seventeenth Judicial District,
In and for the County of Blaine,
The Honorable B.W. Thomas, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Thomas P. Meissner, Lewistown, Montana

    For Respondent:

        Sue Ann Love; Jardine, Stephenson, Blewett & Weaver,
Great Falls, Montana

---

Submitted on Briefs:  April 27, 1989

Decided:  June 27, 1989

Filed:

           Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves the issuance of water and sewer permits by a city government. Plaintiff David C. Mogan appeals from the order of the District Court of the Seventeenth Judicial District, Blaine County, granting summary judgment in favor of the City of Harlem. We affirm.

Mogan presents three main issues on appeal. Restated, they are as follows:

1. Did the District Court err in determining that no genuine issue existed as to any fact deemed material in light of the legal principles entitling the City of Harlem to judgment as a matter of law?

2. Is the City of Harlem immune from suit pursuant to § 2-9-111, MCA?

3. Did the District Court err in denying Mogan's motion to amend his pleading?

In 1983, Mogan made plans to build an "eight-plex" apartment building in Harlem, Montana. The building was to include apartments for low-income residents, and was financed through the Farmers' Home Administration. In March of 1984, Mogan submitted architectural plans for the eight-plex to the Harlem City Clerk, and was issued a building permit.

On a later date that is not certain in the record, Mogan appeared at the City Clerk's Office to discuss water and sewer permits for the building. Ordinance No. 57, enacted in 1978 by the Harlem City Council, required persons wishing to connect to Harlem's water and sewer system to purchase water and sewer permits and install a water meter. Until 1984, the ordinance did not differentiate between single-family houses and multi-family apartment buildings.

ORDINANCE NO. 57
AN ORDINANCE REGULATING CONNECTION TO CITY WATER
AND SEWER SYSTEM
BE IT ORDAINED BY THE CITY OF HARLEM:

Section 1: PERMIT REQUIRED.  Any persons desiring to connect into the City water and sewer system within the city limits, must first make application to the City Clerk for a permit for same.  All applications for such connections shall contain the names and addresses of the persons desiring to so connect, the address of the property to be connected and a statement of the purpose of the water usage.  Additionally, the application shall contain the name and address of the regularly licensed plumber who will do the connection work.

Section 2: FEES.  The Clerk shall collect a fee of Seventy-five Dollars ($75.00) for water and a fee of Fifty Dollars ($50.00) for sewer, prior to the issuance of a permit for connection to city sewer and water within the city limits.

Section 3: WATER METER.  No connection shall be made to the city water system until a water meter has been installed.
. . .

According to deposition testimony by the City Clerk, Mogan was under the impression that only one meter and one set of permits would be required for the building.  The Clerk explained to Mogan that he would need separate permits and water meters for each apartment.  The Clerk also testified that this would conform with the City's prior application of the ordinance.  After her conversation with Mogan, the Clerk brought Mogan's misunderstanding to the attention of the Mayor.

In July of 1984, the Harlem City Council held a special meeting, at which they amended the ordinance to require separate permits and meters for each "household unit," which was defined in the amended ordinance to include an apartment. The amendment was to take effect on August 25, 1984.  On

3

August 24, 1984, the day before the amended version of the ordinance went into effect, Mogan returned to the City Clerk's Office seeking a single water permit and a single sewer permit for the eight-plex. He was again informed that he would need a separate set of permits for each apartment, as per previous practice.

Mogan then met with the Mayor and a city councilman. According to Mogan's deposition, he was told not only that he would be required to purchase eight sets of permits and install eight water meters, but also that the Mayor and the councilman were opposed to the project. They did not want a low-income housing project in Harlem, and intended to stop Mogan. In addition, the Mayor allegedly showed personal animosity toward Mogan. Mogan then demanded to be issued a single set of permits for the building under construction, and one set of permits for each of two additional buildings he was planning to build sometime in the future. All of Mogan's permit requests were denied by the Mayor. Later that day, Mogan returned and gave the Mayor a letter detailing their previous conversation and indicating Mogan's intention to "look to the City of Harlem" for any damages resulting from the Mayor's denial of the requested permits.

The Mayor later wrote a letter to Mogan instructing him to obtain a set of permits and connect a water meter for each apartment in the eight-plex. Mogan did so, and incurred expenses attendant to obtaining the additional permits and altering the plumbing in the building after construction had begun.

In October of 1985, Mogan filed suit against the City of Harlem. He alleged breach of contract, as well as statutory and constitutional violations. The complaint was dismissed for failure to state a claim upon which relief could be granted. On appeal, this Court reversed and remanded,

4

holding that the complaint was sufficient to state a claim. On remand, Mogan filed his First Amended Complaint, alleging violation of state constitutional guarantees of equal protection and due process, and federal constitutional guarantees of equal protection, due process and compensation for the "taking" of property. The City of Harlem filed an answer, and discovery proceeded. After discovery, Mogan moved to file a Second Amended Complaint, and the City filed a Motion for Summary Judgment. The District Court granted summary judgment to the City, and denied Mogan's motion as being moot. This appeal followed.

I.

Mogan first asserts that the District Court erred in granting summary judgment in favor of the City. Mogan cites the standard for summary judgment from our decision in Morrow v. FBS Insurance Montana (Mont. 1988), 749 P.2d 1073, 1074-75, 45 St.Rep. 188, 190:

> According to this Court's interpretations of Rule 56(c), M.R.Civ.P., "[t]he party moving for summary judgment has the initial burden of showing that there is no genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter of law." [citation]

According to Mogan, the City did not meet its burden in the District Court, which should be reversed for two reasons: (a) genuine issues of material fact exist concerning the City's prior application of the ordinance in question, and (b) the court erred in refusing to consider two FmHA memoranda offered as evidence of City officials' improper motives.

Mogan takes issue with the City's position that its application of the ordinance in his case was consistent with the City's treatment of other owners of multiple-unit buildings. He cites instances brought out in discovery where

5

the City applied the ordinance inconsistently. Mogan also cites notes taken by himself and others in meetings with the Mayor and city councilmen showing that the inconsistent treatment he received was motivated by the intention of city officials to impede his project. Mogan asserts that the ordinance was amended specifically to accomplish that end.

The City concedes that inconsistencies in the application of the ordinance exist, but argues that they were the result of inadvertence or mistake. While the notes presented by Mogan show some animosity exhibited toward him by the Mayor, they are not of consequence. First, as pointed out by the City below, the decision to require Mogan to obtain eight permits and install eight meters was made under the version of the ordinance existing prior to the amendment complained of by Mogan. Second, and also shown below by the City, the allegedly offensive amendment merely reflected the City's prior practice.

The "inconsistencies" in the application of the ordinance pointed out by Mogan are just that; they are the exception rather than the rule. The record shows that with only three exceptions, all multiple-unit buildings in Harlem were required to obtain a separate set of permits and connect a separate water meter for each unit. A District Court ruling in Mogan's favor would have resulted in disparate treatment of Mogan's project, not consistent treatment. The City sustained its burden of showing that there was no issue as to any material fact on Mogan's equal protection claims. Mogan simply was not singled out for different treatment, nor was he placed in a class that was treated differently.

Mogan also alleged state and federal due process violations based on the City's alleged failure to give him adequate notice of the meeting at which the ordinance was amended. Given the fact that the City's decision on Mogan's

6

project was made before the amended ordinance became effective and the fact that the amendment did not change the requirements of the ordinance as previously enforced by the City, these claims are moot. Were we to find that Mogan had not been notified properly, the result at best would be harmless error.

Mogan's "taking" claim alleged that the City's denial of the permits he requested deprived him of his property interest in those permits without compensation, in violation of the Fifth Amendment to the U.S. Constitution as applied through the Fourteenth Amendment. This claim is without merit, as Mogan had no property interest in the permits that could be afforded constitutional protection. Property interests are not created by the Constitution. They come from independent sources, such as state law. McCracken v. City of Chinook (D. Mont. 1987), 652 F.Supp. 1300. Mogan has cited no authority upon which he bases his claimed property right in the permits, and our research has uncovered none.

Mogan's second argument, that the District Court erred in refusing to consider proffered memoranda in making its decision, is likewise without merit. The memoranda at issue were alleged by Mogan to have been written by an FmHA official in the course of monitoring Mogan's project. They contain statements made by the Mayor to the FmHA official concerning his dislike for Mogan and his project. The memoranda were excluded on grounds that they constituted hearsay and lacked proper foundation. However, their content does not change the result in this case. Mogan was not prejudiced by the actions complained of here. While the behavior of the Mayor and others may not have been particularly polite, neither was it actionable.

II.

Mogan's second and third issues are intertwined. Mogan asserts that the District Court erred by refusing to allow him to file a second amended complaint. Mogan cites Rule 15(a), M.R.Civ.P., which states that a pleading may be amended by leave of court, and that such leave shall be freely given when justice so requires. Mogan's Proposed Second Amended Complaint differed from his previous complaint by adding factual allegations concerning the Mayor's refusal to issue the permits Mogan demanded for the two contemplated buildings, adding "lost prospective income" from the two contemplated buildings to his claim for damages, and adding a separate cause of action alleging negligence on the part of the City Clerk's Office in issuing a building permit for the eight-plex without ensuring that the plans he submitted conformed to the City's ordinances.

The City cites Prentice Lumber Co. v. Hukill (1972), 161 Mont. 8, 17, 504 P.2d 277, 282, where this Court set out the approach to be used in considering requests to amend:

> "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rule requires, be 'freely given.'"

(quoting Foman v. Davis (1962), 371 U.S. 178, 182, 83 S.Ct. 227, 230). The quoted language is directly applicable to this case, because the proposed amendment would be futile for two reasons. First, our discussion above shows that Mogan had no property interest in the permits he requested for the contemplated buildings and thus could not assert constitutional protection. Second, the only new cause of

8

action alleged--negligence--would have been barred by the immunity afforded the City of Harlem by § 2-9-111, MCA.

Section 2-9-111, MCA, states in relevant part:

(3) A member, officer, or agent of a legislative body is immune from suit for damages arising from the lawful discharge of an official duty associated with the introduction or consideration of legislation or action by the legislative body.

In this case, the ordinances at issue were enacted by the Harlem City Council. As shown by the portion of Ordinance 57 quoted above, the Council through its legislative action in enacting these ordinances charged the City Clerk with official duties concerning the issuance of permits. The Clerk was thus acting as an agent of the Council. Mogan's proposed amendment alleged negligence on the part of the Council's agent in the performance of official duties associated with an action of a legislative body. This Court has very recently held a school board immune from suit under this statute for the actions of its agent in performance of an official duty associated with the board's action. Peterson v. Great Falls Public School District No. 1 and A (Mont. 1989), ___ P.2d ___, 46 St.Rep. 880. The same immunity would apply in this case.

We have found that no genuine issue of material fact exists as to the City's entitlement to summary judgment on Mogan's constitutional claims. We have also found that the District Court's refusal to grant Mogan leave to amend his complaint was correct, because the proposed amendment would have been futile. Therefore, we affirm the decision of the District Court.

_____
Justice

We Concur:

9

_____
Chief Justice

_____

_____

_____
Justices

10