No. 98-044

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 172N

VIDEO WAREHOUSE, INC.,

PHILLIP C. FREY, and

PAULETTE BIELENBERG-PRINZING,

Plaintiffs/Appellants,

v.

TOWN PUMP, INC., a Montana

corporation,

Defendant/Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John C. Doubek, Small, Hatch, Doubek & Pyfer;

Helena, Montana

For Respondent:

Patrick M. Sullivan, Poore, Roth & Robinson;

Butte, Montana

Submitted on Briefs: October 1, 1998

Decided: July 19, 1999

Filed:

No

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. On October 26, 1989, Video Warehouse, Inc., Phillip C. Frey, and Paulette Bielenberg-Prinzing filed this action in the First Judicial District Court, Lewis and Clark County, against Town Pump, Inc. for fraud, constructive fraud, and for breach of contract. On February 1, 1993, Town Pump filed a motion for summary judgment on all claims asserted by Video Warehouse. On June 8, 1993, the District Court granted summary judgment on Video Warehouse's fraud and constructive fraud claims and denied summary judgment on Video Warehouse's breach of contract claims. On October 5, 1993, Video Warehouse filed a motion for leave to amend its complaint which the District Court denied on December 27, 1993. On October 11, 1994, Town Pump filed a motion for summary judgment on the breach of contract claims asserted by Frey and Bielenberg-Prinzing. On November 15, 1994, the District Court entered summary judgment on those claims. On September 8, 1997, Frey and Bielenberg-Prinzing were dismissed from the action.**

**¶3. The matter was tried without a jury from September 8 through September 11, 1997. On December 2, 1997, the District Court signed its findings of fact, conclusions of law, and order in which it determined that Town Pump committed certain breaches of contract and that Video Warehouse was entitled to recover damages in the sum of $3366.50. Video Warehouse appeals from the District Court's findings of fact, conclusions of law, and order. We affirm.**

**¶4. The issues presented on appeal are as follows:**

¶5. 1. Did the District Court err when it granted summary judgment in favor of Town Pump on the fraud and constructive fraud claims?

¶6. 2. Did the District Court err when it refused to allow Video Warehouse an opportunity to amend its complaint to comply with Rule 9(b), M.R.Civ.P., after it had granted summary judgment on the issues of fraud and constructive fraud?

¶7. 3. Were certain findings of fact not supported by evidence or contrary to the evidence?

## FACTUAL BACKGROUND

¶8. The appellant, Video Warehouse, Inc., is a Montana corporation with its principal place of business in Helena, Montana. Phillip Frey and Paulette Bielenberg-Prinzing were officers of Video Warehouse. The respondent, Town Pump, Inc., is also a Montana corporation.

¶9. In July of 1985, Video Warehouse opened a large-scale video rental store in Helena. Initially, the business was financed through a $150,000 Small Business Administration loan and a contribution by the owners of $50,000 in assets. As of January 31, 1986, Video Warehouse had cash on hand in the sum of approximately $22,062. Thereafter, it had a fairly steady depletion of its cash reserves, and by the end of October 1986, it had a negative cash-on-hand balance.

¶10. When Video Warehouse initially commenced its operation, it entered into "satellite agreements" with small convenience stores in area communities. Town Pump represented to Video Warehouse that there was excellent money to be made in the Town Pump stores from the video rentals. Video Warehouse would provide the stores with a selection of movies and rental equipment. The satellite stores' employees would handle the rental of the movies and equipment to the customers. The revenue generated from this arrangement would then be divided between Video Warehouse and the satellite store based upon a formula set forth in the satellite agreement.

¶11. By the summer of 1986, Video Warehouse had such arrangements with five parties, including among others, the Town Pump convenience and gas store in White Sulphur Springs, Montana. The Town Pump store was leased and operated by

independent parties, rather than being a "corporate" store which is one operated by Town Pump. Some of the satellite stores' video rental volume was greater than others. On September 29, 1986, Video Warehouse submitted a written proposal to Town Pump according to which Video Warehouse would provide the movies and related equipment to Town Pump's corporate stores. Essentially, Video Warehouse proposed that starting in October 1986, Video Warehouse would begin placing video movies in most of Town Pump's twenty-six stores, gradually incorporating itself into a few stores each month.

¶12. In October 1986, Video Warehouse proceeded to install its movies in several convenience stores, using its existing inventory from its main video rental business in Helena to supply these locations. Finally, in February 1987, on behalf of Video Warehouse, Phillip Frey signed a long-term, eighteen-month contract with Town Pump which provided that Video Warehouse would supply movies, equipment, and accessories to twenty-five Town Pump convenience stores. Video Warehouse then began installing the movies and video equipment in the identified stores.

¶13. Video Warehouse projected that the Town Pump satellite operation would require an initial investment of more than $136,000. The actual capital infusion obtained by Video Warehouse to fund its expansion into satellite stores was a $20,000 loan from American Federal Savings and Loan. Video Warehouse also obtained a shipment of used movies from a defunct video store in Minnesota in May of 1987.

¶14. In May 1987, when Video Warehouse had placed movies and equipment in just eleven of the Town Pump stores, it defaulted on its SBA loan by failing to make the full monthly payment. In June 1987, it did not pay anything on the SBA loan. In the same month, it did not pay off its $20,000 loan to American Federal Savings and Loan, which was also due at that time, and the loan was extended. Furthermore, it deferred rent payments due to poor cash flow.

¶15. In July 1987, Video Warehouse continued to expand into other satellite locations. By the end of July 1987, it was servicing twenty-eight satellite locations, twenty-three of which were Town Pump "corporate" owned convenience stores. It continued to expand to other non-Town Pump locations, and by the end of September 1987, Video Warehouse was operating its main store in Helena and servicing thirty-one satellite locations throughout Montana. (Seven were non-Town Pump "corporate" stores.) During the period from 1986 to 1987, Video Warehouse's

income and revenues decreased. On April 29, 1988, pursuant to a written agreement executed by the parties, Video Warehouse notified Town Pump of its intent to terminate the agreement effective July 30, 1988.

¶16. Video Warehouse filed this action seeking damages for fraud, constructive fraud, and breach of contract. The District Court granted summary judgment on the issues of fraud and constructive fraud, and ultimately rendered a decision on the breach of contract issue in favor of Video Warehouse, and specified an amount of damages. Video Warehouse now appeals the District Court's findings of fact, conclusions of law, and order.

## STANDARD OF REVIEW

¶17. Our standard of review in appeals from summary judgment rulings is *de novo*. *See Motaire v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court s grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## ISSUE 1

¶18. Did the District Court err when it granted summary judgment in favor of Town Pump on the fraud and constructive fraud claims?

¶19. Video Warehouse maintains that the District Court incorrectly dismissed its

fraud and constructive fraud causes of action for failure to allege a cause of action and because "no specific misrepresentations are alleged in the complaint." Video Warehouse contends that its complaint does in fact allege multiple misrepresentations and omissions which constitute the bases of fraudulent and deceitful conduct on the part of Town Pump. Video Warehouse argues that, in addition to its complaint, it submitted detailed affidavits from Ron Southwick, Paulette Prinzing, and Phillip Frey which give point by point allegations of fraud and constructive fraud. It further claims that it provided detailed documentation of the fraud in its brief in opposition to the motion for summary judgment.

¶20. The essence of Video Warehouse's fraud and constructive fraud allegations are that Town Pump through its agent, Lee Terry, induced Video Warehouse to spend large sums of money personally and corporately and invest time, money and effort into a relationship with Town Pump. Video Warehouse alleges that Terry misrepresented all of the terms and conditions of the relationship from its inception in order to induce Video Warehouse into a business relationship with Town Pump. Specifically, Video Warehouse maintains that Terry lied with regard to the profitability of the video business and how Town Pump could benefit Video Warehouse. It maintains that Terry represented that Video Warehouse could install its videos into more than twenty Town Pump stores if Video Warehouse would enter into a long-term contract with Town Pump even though there were not twenty stores immediately available. Video Warehouse also claims that Town Pump, in material breach of the representations made to Video Warehouse, failed to manage Video Warehouse's equipment in a businesslike manner, did not collect all rental fees on video equipment and properly distribute those fees, did not allow Video Warehouse to determine whether or not video equipment was considered lost, and did not pay an equal share for the lost or missing equipment.

¶21. Town Pump cites *Avco Financial Services v. Foreman-Donovan* (1989), 237 Mont. 260, 263, 772 P.2d 862, 864; *Sprunk v. First Bank Western Montana Missoula* (1987), 228 Mont. 168, 174, 741 P.2d 766, 769, for the proposition that Video Warehouse's fraud allegations are conclusory and unsupported and that because Video Warehouse was at least on "equal footing" with Town Pump on matters involving the video business, it had no right to rely upon any alleged false representations made by Town Pump. According to Town Pump, even if Video Warehouse's allegations are accepted as true, they simply do not constitute fraud and are not set forth in the complaint.

¶22. Generally, when we review a district court s grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Therefore, we review the pleadings and affidavits to determine whether the District Court correctly granted summary judgment. The District Court dismissed Video Warehouse's fraud and constructive fraud causes of action, however, stating that "the present complaint fails to allege a cause of action in either fraud or constructive fraud. . . . No specific misrepresentations are alleged in the complaint." We agree.

¶23. Rule 9(b), M.R.Civ.P., states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The nine elements necessary to make a *prima facie* showing of fraud pursuant to Rule 9(b), M.R.Civ.P., are: (1) representation, (2) falsity of representation, (3) materiality of representation, (4) speaker's knowledge of falsity of representation or ignorance of its truth, (5) speaker's intent it should be relied upon, (6) hearer's ignorance of falsity of representation, (7) hearer's reliance on representation, (8) hearer's right to rely on representation, and (9) consequent and proximate injury caused by reliance on representation. *See Lee v. Armstrong* (1990), 244 Mont. 289, 293, 798 P.2d 84, 87.

¶24. Pursuant to § 28-2-406, MCA, a showing of constructive fraud requires:

(1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

¶25. Video Warehouse contends on appeal that its complaint in combination with several affidavits, satisfies the nine elements of fraud, as well as the elements of constructive fraud, and therefore satisfies the specificity requirement of Rule 9(b), M.R.Civ.P. Our review of the complaint, however, leads us to conclude otherwise.

¶26. With regard to its claims for constructive fraud, Video Warehouse did not specifically allege constructive fraud in its complaint. Therefore, the District Court correctly concluded that the requirements of Rule 9(b), M.R.Civ.P. were not met with regard to constructive fraud.

¶27. Video Warehouse attempts to allege actual fraud in its complaint in approximately nine separate instances. In each instance, however, Video Warehouse fails to aver, even generally, the fourth requirement for fraud, that the speaker had knowledge at the time the representation was made that the representation was false or that the speaker was ignorant of its truth. In order to satisfy the nine-element requirement of *Lee v. Armstrong*, Video Warehouse's allegations should have been more definite as to each element and should have outlined the specific allegations regarding acts and omissions that constitute the fraudulent conduct. In *Pipinich v. Battershell* (1988), 232 Mont. 507, 511, 759 P.2d 148, 150-51, we clearly stated that a cause of action for actual fraud must contain specific factual allegations comprising the nine elements of fraud. In this case, Video Warehouse's allegations of fraud are stated so generally that we are unable to determine which acts constitute the nine elements of fraud. In no instance are we able to determine from the allegations set out in the complaint any indication, even generally as is allowed by Rule 9(b), M.R. Civ.P., that the speaker knew of the falsity of any representation or the ignorance of the truth.

¶28. Accordingly, we agree with the District Court that Video Warehouse's complaint is defective because it fails to adequately allege a cause of action in either fraud or constructive fraud and therefore those causes of action were appropriately dismissed.

## ISSUE 2

¶29. Did the District Court err when it refused to allow Video Warehouse an opportunity to amend its complaint to comply with Rule 9(b), M.R.Civ.P., after it had granted summary judgment on the issues of fraud and constructive fraud?

¶30. It is well settled that pursuant to Rule 15(a), M.R.Civ.P., "[a] pleading may be amended by leave of court and that such leave shall be freely given when justice so requires." *Mogan v. City of Harlem* (1989), 238 Mont. 1, 7, 775 P.2d 686, 689. However, we have also held that:

[W]hile the rule favors allowing amendments, a trial court is justified in denying a motion for an apparent reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, and futility of the amendment, etc."

*Lindey's Inc. v. Professional Consultants, Inc.* (1990), 244 Mont. 238, 242, 797 P.2d 920, 923 (quoting *Forman v. Davis* (1962), 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222, 226).

**¶31. Video Warehouse claims that the District Court should have permitted it to amend its complaint to more specifically assert its allegations of fraud and constructive fraud. We conclude, however, that because Video Warehouse's claims for fraud and constructive fraud were adjudicated prior to its request to amend its complaint, the District Court was correct to disallow any amendment.**

**¶32. On October 26, 1989, Video Warehouse filed its complaint against Town Pump. On October 5, 1992, the District Court issued a pretrial scheduling order, which stated that motions to amend pleadings must be filed by October 16, 1992, and that all discovery shall be completed by January 8, 1993. On February 1, 1993, after discovery had closed and after the court-imposed deadline for motions to amend pleadings had expired, Town Pump moved for summary judgment pursuant to Rule 56, M.R.Civ.P. The District Court issued its decision and order on June 8, 1993, in which it granted Town Pump's motion for summary judgment on Video Warehouse's fraud claims and denied the motion with respect to the other claims.**

**¶33. On October 5, 1993, Video Warehouse filed a motion for leave to file an amended complaint to set forth claims for fraud, constructive fraud, breach of contract, bad faith, and negligent misrepresentation. Video Warehouse's motion was filed approximately four years after it filed its complaint, one year after the deadline for filing motions to amend pleadings had expired, nine months after the close of discovery, and more than four months after the District Court entered its order granting, in part, Town Pump's motion for summary judgment.**

**¶34. The District Court denied Video Warehouse's motion to amend on December 27, 1993, citing its previous ruling on Video Warehouse's fraud and constructive**

fraud claims and the fact that the deadline for filing amended pleadings expired more than a year earlier.

¶35. In *Matter of Estate of Wallace* (1990), 186 Mont. 18, 606 P.2d 136, we affirmed a trial court's denial of a similar motion to amend. In that case the plaintiff sought to file an amended complaint which asserted a claim which the district court had already considered and dismissed. We held that "the District Court was correct in refusing to grant leave to file an amended complaint which tendered the same claim after the Court's decision against it." *Matter of Estate of Wallace*, 186 Mont. at 27, 606 P.2d at 140. Based upon our decision in *Estate of Wallace*, we conclude that because there no longer existed a claim to be amended because summary judgment had already been granted, the District Court was correct when it refused to grant Video Warehouse leave to file an amended complaint.

ISSUE 3

¶36. Were certain findings of fact not supported by evidence or contrary to the evidence?

¶37. The standard of review of a district court's findings of fact is whether they are clearly erroneous. *See Gallatin County v. Montana Eighteenth Judicial Dist. Court* (1997), 281 Mont. 33, 42-43, 930 P.2d 680, 686 (citing Rule 52(a), M.R.Civ.P.) We have adopted a three-part test in *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 820 P.2d 1285, to determine whether the findings are clearly erroneous. The test provides that:

(1) The Court will determine whether the findings are supported by substantial evidence;

(2) If the findings are supported by substantial evidence, the Court will determine if the trial court has misapprehended the evidence;

(3) If the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still conclude that "[a] finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." (Citing *United States v.*

*United States Gypsum Co.* (1948), 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746.)

*DeSaye*, 250 Mont. at 323, 820 P.2d at 1287. Moreover, "[a]n error in the court's findings of fact will not lead to reversal unless a correction of the error might lead to a different judgment." *D&F Sanitation Service v. City of Billings* (1986), 219 Mont. 437, 444, 713 P.2d 977, 981. Video Warehouse contends that the District Court's Findings of Fact Nos. 28, 35, 24, 27, 23, and 26 are clearly erroneous. Each of these findings will be addressed separately.

Finding of Fact No. 28:

**¶38. The District Court stated in Finding of Fact No. 28 that Video Warehouse failed to adequately monitor the satellite locations and that if the locations were monitored more closely, Video Warehouse would have detected the alleged shortcomings in Town Pump's management.**

**¶39. Video Warehouse contends that this finding is erroneous for three reasons: first, because a term of the contract between the parties provided that Town Pump was responsible for renting the movies, collecting fees and managing the equipment; second, because Town Pump's manager, Lee Terry, agreed to manage the equipment in a businesslike manner; and third, because Video Warehouse's employees were instructed not to make "unannounced" visits to the stores.**

**¶40. We agree with Town Pump that this finding is not clearly erroneous. Although unannounced, or drop-in inspections were discouraged by Town Pump, Video Warehouse was not restricted from making scheduled inspections of the stores, or arranging an effective monitoring system with Town Pump. Certainly, scheduled regular visits to the satellite stores would have allowed Video Warehouse a better opportunity to detect and remedy the alleged shortcomings in Town Pump's management of the video rental operations.**

Finding of Fact No. 35:

**¶41. Video Warehouse claims that there is no evidence to support Finding of Fact No. 35, in which the District Court stated that Video Warehouse relied on its own projections rather than on the prior vendor's revenue figures. This finding was made**

in response to Video Warehouse's allegation that Town Pump induced it to enter into the contract by providing false figures. Frey and Bielenberg-Prinzing clearly testified, however, that Video Warehouse had made projections for Video Warehouse using conservative figures approximately half of what Town Pump had represented, which indicated that the operation would still be profitable if those figures were achieved. Thus, we agree with Town Pump that Finding of Fact No. 35 is not clearly erroneous.

Finding of Fact No. 24:

¶42. Video Warehouse claims that the District Court's Finding of Fact No. 24 was also in error and not supported by substantial evidence. Finding of Fact No. 24 provides that Video Warehouse was undercapitalized in comparison to its competitors in Helena and that more capitalization would have enabled Video Warehouse to compete and maintain profitable business at all of its locations.

¶43. Our review of the record leads us to conclude that there is substantial evidence to support this finding. Video Warehouse had initially projected that its expansion into the Town Pump satellite operation would require an investment of more than $136,000 during the first six months of operation. Video Warehouse's initial capital infusion, however, consisted primarily of a $20,000 loan obtained in late December 1986. Video Warehouse obtained approximately 2000 used movies and a number of video cassette players in May 1987. The value of these movies and equipment was approximately $100,000. We agree with Town Pump that Video Warehouse simply did not have enough capital to purchase a sufficient number of new release movies to adequately supply its main store operation in Helena and its approximately thirty satellite operations around the state. According to the expert witness testimony of Robert Wilson, the availability of new release movies is the most important factor in the success of a video operation. As testified to by Wilson, Video Warehouse was purchasing about the same number of new release movies for all of its locations as Wilson purchases for his single video rental store in Butte. This evidence was not misapprehended by the District Court and clearly supports Finding of Fact No. 24.

Finding of Fact No. 27:

¶44. In Finding of Fact No. 27, the District Court stated that Video Warehouse made allegations of various incidents of mismanagement, such as managers returning

damaged movies and equipment to Video Warehouse and permitting store employees to rent movies and equipment without paying the contract rental prices. The District Court also stated that Town Pump acknowledged that three stores did have management problems, but that Video Warehouse failed to prove any resulting damages.

¶45. Video Warehouse maintains that this finding is nonsensical and absurd because Town Pump controlled all of the paperwork with regard to the video rentals and so it would have been impossible for Video Warehouse to document that it had incurred any particular loss from any particular store.

¶46. We conclude, however, that Video Warehouse's very own assignment of error demonstrates the accuracy of the District Court's finding that "Video Warehouse failed to provide a monetary amount of damages incurred therefrom." The District Court did not deny that Video Warehouse may have suffered damages from the alleged mismanagement, it simply found that Video Warehouse failed to provide a calculation or estimate of those damages alleged to have been suffered. By Video Warehouse's own admission it did, in fact, fail to do this. The strongest argument Video Warehouse offers with regard to damages for mismanagement is "what [profit] Town Pump said should have been made versus what was [actually] made." Although Video Warehouse claims it suffered damages, it fails to provide a more definite and certain statement of a monetary amount of damages. Accordingly, the District Court's Finding of Fact No. 27 is not clearly erroneous.

Finding of Fact No. 23:

¶47. In its Finding of Fact No. 23, the District Court found that the evidence showed that Video Warehouse was unable to supply all of its satellite locations with enough videos, including new releases, to maintain sufficient income and to remain competitive with other video rental businesses.

¶48. Video Warehouse contends that this finding is not supported by substantial evidence because Video Warehouse's inventory was similar to that of Stars to Go, another video rental business, and because Robert Wilson, the expert witness who disputed this fact, acknowledged that he had never operated video rental businesses at convenience stores. We disagree.

¶49. On most occasions, Video Warehouse purchased between four and ten copies of popular movies for all of its locations including its store in Helena and its twenty-five to thirty satellite locations. Robert Wilson, an expert witness and owner of another video rental business, testified that he normally buys twice as many copies of popular movies for just a single video rental location. Moreover, Video Warehouse's employees testified that there were not enough copies of new release movies supplied to the Helena main store operation. Bob Scheet testified that there was a severe problem with a lack of new release movies at his store in Conrad, and Lee Terry also testified to the identical problem.

¶50. Many of the new release movies were actually delivered to the stores for the first time three to six months after the date of release. Bielenberg-Prinzing and Frey acknowledged that the "revenue generating potential" of a movie "is all but over" after ninety days. Thus, the useful life of many of the movies shipped to the Town Pump stores, in terms of their revenue generating potential, had already expired before they were received by the stores.

¶51. Accordingly, we conclude that the District Court's Finding of Fact No. 23 is not clearly erroneous.

Finding of Fact No. 26:

¶52. In Finding of Fact No. 26, the District Court noted that Video Warehouse failed to prove any monetary loss due to Town Pump's misuse of tickets which function as receipts and records of video and equipment rental.

¶53. Video Warehouse maintains that this finding is clearly erroneous because the misuse of tickets accounted for an average of seventy errors each month at a minimum value of $3 per error which, according to Video Warehouse, is proof of monetary loss.

¶54. Town Pump's accounting procedures, however, allowed video rental sales to be tracked in two different ways; one by review of the actual tickets, and the other by review of the daily cash register tapes which reflect video sales. We agree with the District Court that Video Warehouse failed to demonstrate how the misuse of tickets contributes to monetary loss when a second form of video rental tracking was available. Moreover, Video Warehouse fails to demonstrate where in the record it

provided the District Court with the monetary figures for loss due to misuse of the tickets it provides this Court on appeal. Accordingly, we conclude that the District Court's Finding of Fact No. 26 is not clearly erroneous.

¶55. Finally, Video Warehouse claims that the District Court erred because it apparently overlooked the fact that exhibit 15 demonstrated that Town Pump failed to pay all of the monies due because of missing movies after the store took its final inventory. It maintains that the loss amounted to $4,634.69. However, based upon the testimony of Bielenberg-Prinzing, exhibit 15 is merely a message slip that addresses only an alleged amount owing. This amount due is not established, rather it is simply an amount Video Warehouse claims it is owed. Other than this message slip, Video Warehouse presented no evidence to the District Court to establish that this alleged amount is actually due. Video Warehouse failed to meet its burden of proving its claim for this amount, therefore, we conclude that the District Court did not err when it did not account for this alleged debt owed to Video Warehouse in its award of damages.

¶56. Accordingly, we conclude that all of the District Court's findings of fact are supported by substantial evidence which was not misapprehended, and that no mistake was made by the District Court. The judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

No

/S/ TERRY N. TRIEWEILER