No. 79-121

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

RAYMOND V. GOERES, BARBARA K. GOERES,
husband and wife; DAN L. OAKLAND and
SHARON D. OAKLAND, husband and wife,

Plaintiffs and Respondents,

-vs-

LINDEY'S INC., a corporation,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honor-
able James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Skelton & Luck, Missoula, Montana
Robert Skelton argued, Missoula, Montana

For Respondent:

Worden, Thane & Haines, Missoula, Montana
Ronald Bender argued, Missoula, Montana

---

Submitted: September 9, 1980

Decided: NOV 25 1980

Filed NOV 25 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from the District Court of the Fourth Judicial District which issued a permanent injunction against the appellant restraining it from making commercial use of a particular parcel of land located in a subdivision known as Seeley Lake Shore Sites.

Seeley Lake Shore Sites is a platted subdivision which was filed in 1944 by a corporation later known as Seeley Lake Development Corp. By deed dated February 4, 1947, Seeley Lake Development Corp. conveyed seven lots (Lots 55, 79, 81, and a portion of Lots 83, 85, 87 and 89) to Edward Coyle. This deed contained certain restrictive covenants which purported to apply to all lots in the subdivision with the exception of several lots, including Lot 1, now owned by appellant, Lindey's, Inc. The covenants, as stated in the deed, were to provide a uniform plan for the improvement of the subdivision in which all uses were to be residential and noncommercial. They included specific restrictions on the type, size, and location of structures built, as well as a restriction indicating use by "Caucasians" only. There was no mention of these restrictive covenants in the original subdivision plat.

By a deed dated March 4, 1948, fifty-one lots, including Lots 1, 3, 5 and 7 now owned by the parties to this action, were conveyed by the Seeley Lake Development Corp. to its principal stockholders, John and Evelyn Rahn. In the deed there were no restrictive covenants. On July 13, 1948, the Rahns reconveyed Lot 42 to Seeley Lake Development Corp. In the deed were the same covenants as in the previous sale to Coyle, which purported to restrict the use of the lots in the subdivision solely to residential use.

By a warranty deed dated August 19, 1954, the Rahns granted to George and Eileen Steinbrenner twenty-five of the lots, including Lots 1, 3, 5 and 7, without any restrictions or reference to any restrictions. The Steinbrenners, by deed dated August 19, 1954, granted twenty-four of the twenty-five lots, including Lots 1, 3, 5 and 7, to James and Bertha Sullivan, again without subjecting the lots to any restrictions. On May 1, 1962, the Sullivans by deed granted to Robert and Dorothy Lee Lots 1 and 3 without restriction or reference to any restrictions; further, the Lees' title insurance policy on said lots made no reference to any restrictions as to the lots or the subdivision.

Through a series of quitclaim deeds, ownership to Lots 1 and 3 became recorded in the name of William Forest. Lindey's, Inc., intending to construct and operate a commercial restaurant and bar, acquired these lots from Forest by virtue of a contract for deed dated October 19, 1978. Prior to executing the contract, Lindey's received a title commitment from American Land Title Co. of Missoula which set forth a specific exception as to the covenants, conditions and restrictions contained in the July 13, 1948, Rahn deed.

In spite of the mentioned restrictive covenants, Lindey's purchased the property and began excavation shortly thereafter. On November 20, 1978, plaintiffs sent a letter to Lindey's, pointing out the restrictive covenants and their application to Lot 3 and further stating that if the covenants were not complied with, plaintiffs would take legal action to enforce them. Lindey's responded by pointing out that there were no restrictive covenants in its chain of title.

Lindey's heard nothing further from plaintiffs until January 25, 1979, when plaintiffs sent a follow-up letter reiterating what was said in the first letter. Lindey's presented testimony, however, that shortly after receiving the second letter, when asked by an agent of Lindey's "whether there would be a problem down there," as he was pointing to the restaurant construction, Dan Oakland, one of the plaintiffs herein, informed him there would be none.

Lindey's continued with construction, expending over $200,000 prior to plaintiffs' commencing their suit, at which time the restaurant was 80 percent complete.

On April 2, 1979, plaintiffs, as owners of Lot 7 and the north half of Lot 5 of the Seeley Lake Shore Sites subdivision, brought suit to enjoin defendant from building the restaurant, bar and lounge on Lots 1 and 3. Plaintiffs alleged that defendant, in commencing to construct the restaurant, was in violation of restrictive covenants running with the land. At the time of filing the suit, the District Court issued an ex parte injunction and an order to show cause why a restraining order should not issue.

On April 4, 1979, defendant Lindey's, Inc., moved to dissolve the injunction and on April 9 filed a motion to dismiss the suit. Lindey's filed an answer to plaintiffs' complaint and memorandum in support of its motions on April 11, 1979. A hearing on the matter was held after which the District Court issued a permanent injunction finding that there were enforceable covenants and that Lindey's had adequate notice of them. The court later denied a motion for a new trial filed by defendant, stating that any new evidence which Lindey's wished to introduce was available at the original hearing and, in any event, would not be dispositive of the case. Lindey's, Inc., now appeals.

Numerous issues have been raised by both parties on appeal, but we need only deal with the following:

Did the District Court err in concluding that Lot 3 is subject to a restriction against commercial use as set forth in a July 13, 1948, deed of Lot 42, and thereby err in issuing the permanent injunction?

Appellant contends that, since the chain of title as to Lot 3 contains no mention of any restrictive covenants, the restriction against commercial use cannot be enforced in this instance. Respondents contend that, as to all the lots in Seeley Lake Shore Sites, an implied reciprocal negative easement was created when the restriction against commercial use was placed in the 1948 deed of Lot 42. Respondents then conclude, since such an easement is enforceable even though not contained in a deed to each lot in the subdivision, the District Court was proper in finding that Lot 3 was subject to the restrictive covenant of noncommercial use.

Implied restrictive easements or reciprocal negative easements have been recognized in other jurisdictions as coming into play where the owner of two or more lots situated near one another (such as in a subdivision) conveys one of the lots with express restrictions, as to use, of benefit to the lots retained by the grantor. In such a case the servitude becomes mutual, and during the period of restraint, the grantor and owner of the lot retained may do nothing that is forbidden to the lot sold. This implied restriction on the use of the lot(s) retained by the grantor is called a reciprocal negative easement, which can be enforceable against the grantor or subsequent purchasers of the retained lot(s) whether or not said restrictions are placed in the

subsequent deed. 20 Am.Jur.2d Covenants, Conditions and Restrictions, §173 at 732-733; Lewski v. Montealegre (1960), *Lanski* 361 Mich. 44, 104 N.W.2d 772; Price v. Anderson (1948), 358 Pa. 209, 56 A.2d 215; McQuade v. Wilcox (1921), 215 Mich. 302, 183 N.W. 771. An easement of this type, however, has not been recognized by this Court, nor is there any statutory provision pertaining to such an equitable easement.

As to the status of implied covenants in this jurisdiction, section 70-20-304, MCA, provides:

"(1) . . . in any conveyance by which an estate of inheritance or fee simple or possessory title is to be passed, the following covenants and none other . . . are implied unless restrained by express terms contained in such conveyance:

"(a) . . . grantor has not conveyed the same estate . . . to any person other than the grantee;

"(b) . . . such estate is at the time of execution of such conveyance free from encumbrances done, made, or suffered by the grantor . . . ."

This section was deemed to abolish all implied covenants (other than the two enumerated exceptions not applicable here) in Simonson v. McDonald (1957), 131 Mont. 494, 311 P.2d 982. In Simonson the plaintiff purchased a parcel of land from Northern Pacific Railway which had no means of access other than across the defendant's land. Plaintiff brought an action for right-of-way claiming that when Northern Pacific sold the land to the defendant it reserved by implication an easement across the land for the benefit of the retained land which was later conveyed to the plaintiff. This Court, relying on section 70-20-304, MCA, concluded no such implied easement is valid in Montana.

In Thisted v. Country Club Tower Corp. (1965), 146 Mont. 87, 405 P.2d 432, however, this Court stated, "there can be implied reservations or implied grants of easements

by necessity in Montana" and held that the language in _Simonson_ is too broad and is to be "limited in its application to the facts existent in that case."

_Thisted_ involved the construction of an apartment building. Before completion of the construction, a contract describing the apartment building as residential was executed between the builder and a "Mrs. Roberts." All subsequent grantees were given a copy of this contract and a brochure describing the general development scheme as communal group living arrangements. None of the deeds eventually issued to Mrs. Roberts and the subsequent grantees, however, contained any express restrictions as to the use of the apartments. An attempt was made by the builder to convert some apartments to commercial use, but the Court upheld a challenge to the move by holding there was an implied equitable servitude attached to the units which requires use of them for residential purposes only.

Respondents place a great deal of reliance upon _Thisted_. They contend that this case recognizes, at least by implication, reciprocal negative easements, and thus, it should be applied in this instance. We disagree, however, with the extension offered by respondents and conclude that this case can be distinguished from _Thisted_.

In the application of implied restrictions on the use of land, principles of equity are controlling. Thus, each case must be determined separately after an examination of the particular facts and circumstances. Additionally, any implied negative easements as to a particular lot are to be considered with _extreme_ caution since such an action results in depriving a person of the use of his property by imposing

a servitude through mere implication.  See Bellemeade Com-

pany v. Priddle (Ky. 1974), 503 S.W.2d 734; 20 Am.Jur.2d

Covenants, Conditions and Restrictions, §173 at 735; 21

C.J.S. Covenants, §19 at 895.  With this being the case, an

implied restriction upon the use of land should only be

enforced as an equitable servitude against a transferee who

takes with knowledge of its terms and under circumstances

that would make enforcement of the restriction equitable.

See Marra v. Aetna Construction Co. (1940), 15 Cal.2d 375,

378, 101 P.2d 490, 492.

In Thisted all the parties, transferee and transferor,

were aware that the building was to be used solely for

residential purposes.  This knowledge was evident from

descriptive brochures shown to all prospective purchasers

describing the living arrangement, for all purposes, as

residential.  In addition, all contracts submitted to the

prospective purchasers referred to the building solely as an

apartment building with the capacity of only twenty apart-

ments and one caretaker unit.  Based upon these representa-

tions, which in fact were relied on by the purchasers of the

apartments, the court attached in equity a servitude on the

transfers of the apartments requiring their use solely for

residential purposes.  It is obvious that the failure of the

court to so provide would have been inequitable under the

circumstances.

In the case at hand, however, the basis on which re-

spondents wish to imply a restriction against commercial use

as to Lot 3 is the July 14, 1948, deed of Lot 42, which

purported to make the restriction applicable to every lot in

the subdivision.  In no instance was evidence presented that

appellant or its predecessor was  ever informed in a deed,

contract, or brochure, or by representations of the seller, that the lots were subject to a restriction against commercial use. Furthermore, no evidence was presented that the restriction was ever placed in the original subdivision plat.

Respondents argue that even though the restriction was not placed in appellant's chain of title, subsequent purchasers of various lots in the subdivision have continued to use their property solely for residential purposes. Therefore, appellant was on constructive notice as to the restriction against commercial use. Respondents also note that appellant's title insurance report indicated that the restrictions contained in the 1948 deed of Lot 42 were excepted from their title policy as to Lot 3, thereby further indicating that appellant was on constructive notice as to those restrictions.

We must disagree with respondents' contentions. As to the uniform appearance of the land, there was conflicting evidence which indicated that some commercial use of a number of lots was being made. However, even if this was not the case, the fact that a party may be aware, and thus on notice, that certain restrictions may be applicable to other parcels of property does not also create a presumption that the person has knowledge that said restrictions are applicable to the property he is purchasing as well. Furthermore, the fact that a party is informed by a title company of a single deed, outside his chain of title, is not enough to impute knowledge that the restrictions contained in that deed are applicable to the lot he is about to purchase. This is especially so when the subdivision plat makes no mention of any restrictions whatsoever and a single

owner of less than all the lots in the subdivision purports to restrict the use of the land as to the whole subdivision. Equity in such a situation requires more if this Court is to restrict the use of land by mere implication.

By holding that appellant is not bound by the restrictive covenant as to commercial use, we do not also find that said covenant does not exist at all as to the subdivision at issue. We merely hold that to enforce these implied restrictions so as to be applicable to a particular transfer of land it is necessary to show knowledge of the restrictions by the transferee at the time of purchase and that enforcement of the implied restrictions will not be inequitable. Respondents having failed in this regard, we must reverse the decision rendered by the District Court.

The judgment of the District Court is reversed with instructions to enter judgment for defendant, Lindey's Inc.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-