No. 01-051

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 223

JODY LOOMIS and JENNIFER LOOMIS,

Plaintiffs and Appellants,

v.

DONALD H. LURASKI and MARVA M. LURASKI,

Defendants and Respondents,

LARRY R. KOLB and JUDITH P. KOLB,

Defendants-Intervenors and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis & Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael J. Uda, Matthew J. Quinn, Doney, Crowley, Bloomquist & Uda, P.C., Helena, Montana

For Respondents:

Carl A. Hatch, Small, Hatch, Doubek & Pyfer, Helena, Montana

For Intervenors:

David B. Cotner, Boone, Karlberg & Haddon, Missoula, Montana

Submitted on Briefs: June 14, 2001
Decided: November 9, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Plaintiffs, Jody and Jennifer Loomis, brought this action in the District Court for the First Judicial District in Lewis & Clark County to establish an easement across the property of the Defendants, Donald and Marva Luraski. Larry and Judith Kolb intervened because the easement at issue would pass over and across the east thirty feet of the Kolb property. All three parties filed motions for summary judgement which were denied. Following a two-day non-jury trial, the District Court entered Findings of Fact, Conclusions of Law, and an Order in favor of the Luraskis and Kolbs. The Loomises appeal the District Court's judgment. We affirm the judgment of the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it concluded that there was no easement by reservation as a matter of law based upon the documents of record?

¶4 2. Did the District Court abuse its discretion when it refused to allow the Loomises to amend their claim and set forth a new theory of recovery?

¶5 3. Did the District Court err when it found that the Loomises failed to show strict necessity and concluded there was no easement by necessity?

FACTUAL BACKGROUND

¶6 At issue is whether Buffalo Horn Road extends as an easement beyond a cul de sac at the southwest corner of the Luraski parcel and the southeast corner of the Kolb property, to the Loomis parcel on the north. The alleged easement would pass over and across the east thirty feet of the Kolb property and the west thirty feet of the Luraski parcel.

¶7 Prior to 1973, the Chevallier Ranch Company owned several thousand acres of property north of Helena in Lewis & Clark County, which included all property involved in this litigation. In two separate transactions, Chevallier sold portions of its property.

¶8 On May 1, 1973, Larry Kolb entered into an unrecorded contract for deed to purchase approximately 5440 acres from Chevallier. The property purchased by Kolb included the tract that was ultimately sold to Donald and Marva Luraski, and was located south of the parcel which was later transferred to Jody and Jennifer Loomis. In addition to transferring the 5440 acres, the contract further provided:

> It is further understood and agreed that in the event the seller shall be desirous of selling to the buyer acreages included within the new fence on the North boundary, said acreage shall be sold at the rate of Sixty Dollars ($60.00) per acre, and the buyer will be responsible for any survey that may be required to determine that acreage.

¶9 The property located directly north of the Kolb property, and described above, is otherwise known as the "option property." The eventual Loomis parcel was part of the option property, while the Kolb and Luraski tracts were created from the property originally transferred to Kolb.

¶10 A notice of purchaser's interest describing the conveyance from Chevallier to Kolb was recorded in the records of Lewis & Clark County in Miscellaneous Book 100, Page 373. On May 1, 1973, Chevallier also executed a warranty deed which was placed in escrow pending the satisfaction of all contract terms. Chevallier did not expressly reserve an easement over the Kolb property in either the contract or the deed.

¶11 At the time of its sale to Kolb, Chevallier had independent legal access to the remainder of its property from the north via Applegate Drive.

¶12 After purchasing the property, Kolb retained Sorenson & Company, Inc., to prepare a certificate of survey relative to the Kolb property. COS No. 243270 was prepared and recorded on May 13, 1974. COS No. 243270 depicted "Roadway A" as extending all the way to the north boundary of Kolb's property, providing access from the Kolb property to the option property. COS No. 243270 also created the Luraski parcel.

¶13 On September 19, 1975, the Kolbs sold a parcel of their property to the Luraskis. A

warranty deed transferring the property was executed and placed in escrow to be delivered to the Luraskis upon performance of their contractual commitments. In the warranty deed, the Luraski parcel is described as follows:

> A tract of land in the Northwest Quarter of the Northwest Quarter (NW1/4 NW1/4) of Section Two (2), Township Eleven (11) North, Range Four (4) West, further described as Government Lot Four (4).
>
> *See Certificate of Survey No. 243270.*
>
> SUBJECT, however, to the following:
>
> (1) All reservations, easements, or rights-of-way of every type and nature contained in patents or subsequent deeds of record, actually in place and located on the ground;
>
> *(2) A reservation of a right-of-way and easement over and across the West thirty (30) feet of the property conveyed for the purpose of establishing a public road and easement for utilities; . . . (Emphasis added.)*

The contract was fully performed and the warranty deed was recorded on May 6, 1988, in M Book 8, Page 8638, of the records of Lewis & Clark County.

¶14 Larry Kolb testified that the reservation was included in the Kolb-Luraski deed to provide access over the Luraski parcel to the option property via Roadway A, now known as Buffalo Horn Road, in the event he was able to acquire the option property from Chevallier.

¶15 Following the sale to the Luraskis, the Kolbs realized they were not going to be able to purchase the option property. Based on this determination, the Kolbs again retained Sorenson & Company to prepare an amended certificate of survey. Its purpose was to revise the roads laid out in COS No. 243270. The Kolbs, having been unsuccessful in acquiring the property, no longer needed the reservation across the Luraski parcel to access the option property. On COS No. 262819, Roadway A ended in a cul de sac at the southwest corner of the Luraski tract. COS No. 262819 was recorded on April 8, 1976. Language in the Kolb-Luraski deed, being held in escrow, was never revised to remove the language of reservation over and across the west thirty feet of the Luraski parcel.

¶16 On November 1, 1979, Chevallier sold the option property to John Jardine, acting on

behalf of C.W. Leaphart, W. William Leaphart, Dr. Cook, Theresa Herzog, and himself (hereafter "Jardine Group"), under the terms of a contract for deed. Although the option property was not yet subdivided into separate parcels, it included the land later carved out as the Loomis parcel.

¶17 On March 24, 1981, John Jardine wrote to Larry Kolb and offered to sell the Jardine Group property. He indicated that the property could be accessed along its easterly border. While the offer was rejected by Kolb, the letter indicated Jardine's belief that there was no access to the Jardine Group property through Buffalo Horn Road. The Jardine Group also attempted to obtain an easement from the Luraskis, north of the cul de sac to the option property, but the Luraskis declined.

¶18 On April 16, 1991, Jardine prepared COS No. 469162, dividing the Jardine Group property into several tracts. On December 9, 1993, C.W. Leaphart and Jardine requested that an amended certificate of survey by prepared and filed. COS No. 50374 amended COS No. 469162 by changing the access road easements to and within the Jardine Group property, and depicted a sixty-foot access road easement between Tract 3 and 4 to the Loomis parcel.

¶19 Another certificate of survey, COS No. 511125, was prepared and filed on or about January 14, 1994, which further changed the access road easements, but maintained the sixty-foot access road easement between Tract 3 and 4 to the Loomis parcel. In August of 1994, the Loomis parcel was purchased by Theresa B. Hartzog, and minor changes were made to the Loomis parcel in COS No. 530534, filed March 16, 1995. COS No. 530534 noted the sixty-foot access road easement shown on COS No. 511125.

¶20 On or about March 21, 1995, Hartzog sold the Loomis parcel to Pat Bizzalion by a contract for deed. Bizzalion subsequently assigned the purchaser's interest in this contract for deed to Sandy Stillwell. Stillwell then sold the property to the Loomises by warranty deed on May 8, 1998.

¶21 The Loomises have legal access to the sixty-foot easement shown on COS No. 511125, which connects their tract with Diamond Springs Road. No road has ever been built on that easement. The Loomises contend that the easement does not provide practical physical access to their land, given the steepness of the terrain over which it passes. Access to the Loomises property is currently provided over a neighbor's road. However, they have no permanent easement over that road.

¶22 Jack Black, an excavating contractor, and the Loomises expert witness, testified at trial that a road could be built on the legal easement and if constructed, emergency vehicles could traverse the easement. The cost of building a road on the easement was estimated at $10,000 to $12,000.

¶23 The extension of Buffalo Horn Road along the west thirty feet of the Luraski parcel, and the east thirty feet of the Kolb property has never been constructed by any party. The road ends as a cul de sac at the southwest corner of the Luraski parcel and the southeast corner of the Kolb property.

## STANDARD OF REVIEW

¶24 We review a district court's conclusions of law to determine whether they are correct. *Kelly v. Burlington Northern R.R. Co.* (1996), 279 Mont. 238, 242, 927 P.2d 4, 6. The standard of review for a district court's denial of a motion to amend the pleadings is whether the district court abused its discretion. *Yellowstone Conference of United Methodist Church v. D.A. Davidson, Inc.* (1987), 228 Mont. 288, 292, 741 P.2d 794, 797. The Court's standard of review of a district court's findings of fact is whether those findings are clearly erroneous. Rule 52(a), M.R.Civ.P. Findings are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a clear and definite mistake has been committed. *Garrison v. Averill* (1997), 282 Mont. 508, 516, 938 P.2d 702, 707.

## DISCUSSION

## ISSUE 1

¶25 Did the District Court err when it concluded that there was no easement by reservation as a matter of law based upon the documents of record?

¶26 As a procedural matter, the Loomises contend they are appealing the denial of their Motion for Summary Judgment filed on February 7, 2000. However, after review of the Loomises' brief, it appears the issue being appealed is whether the District Court erred when it concluded as a matter of law there was no easement by reservation based on the documents of record. The District Court denied summary judgment on February 22, 2000, because material facts were still in dispute. The District Court's conclusions of law were not made until after the non-jury trial. If we were to review the denial of summary

judgment, we would review whether the District Court erred in its determination that there were still material facts in dispute, and not address the legal issue. We believe the issue on appeal is the legal conclusion made by the District Court, and shall proceed according to that assumption.

¶27 The Loomises contend that an easement by reservation over the west thirty feet of the Luraski parcel was created by two clauses within the Kolb-Luraski deed: (1) the reference to the certificate of survey in the legal description; and (2) the express reservation of the easement. They further contend they are not strangers to the deed because the disputed easement is described as a "public" road by the deed, and, therefore, an easement by reservation was made to the public at large. In the alternative, if the Loomises were strangers to the deed, they contend that the Kolbs intended to create an easement for the benefit of the option property, not an easement for themselves.

¶28 The District Court concluded the Loomises were strangers to the Kolb-Luraski deed. An easement by reservation in favor of a stranger to the deed can be established only by clearly showing the grantor's intent to do so. Because the testimony and evidence established that the Kolbs intended to preserve their options for means of access to the option property only in the event they were to purchase it, the District Court held there was no easement by reservation for the benefit of the Loomises. Furthermore, the only deed that incorporated a certificate of survey indicating the disputed easement was the Kolb-Luraski deed, which did not pertain to the option property and is outside the Loomises' chain of title. We conclude that the District Court was correct in its legal conclusions.

¶29 The central issue is whether the Loomises are strangers to the deed. Strangers to the deed are those who are not parties to it. 23 Am. Jur. 2d *Deeds* § 88 (1983); Black's Law Dictionary 1433 (7th ed. 1999). Here, the deed containing the reference to COS No. 243270 and the express reservation was from the Kolbs to the Luraskis. The Loomises were not parties. When the Chevallier property was split into two sections, one section was sold to the Kolbs in 1974, while the second section, the option property, was sold to the Jardine Group in 1979. The Loomis parcel was part of the Jardine Group development, not the Kolb property. The disputed easement was not mentioned in any documents of conveyance relating to the option property.

¶30 The Loomises argue that because the express reservation is for a "public" road, no one should be considered a stranger to the deed. We disagree. To permit the Loomises, who

were neither a party to the deed nor a successor to a party to the deed, to have standing to make an easement claim would alter long-standing property principles. It is entirely plausible that a grantor with future plans for subdivision would reserve an easement for the possible construction of a public road. However, no rights are granted to the publc prior to the roads actual creation and dedication.

¶31 The majority rule in other jurisdictions is that an easement cannot be reserved in favor of a stranger to the deed. *Medhus v. Dutter* (1979), 184 Mont. 437, 444, 603 P.2d 669, 673. Transactions involving a stranger to the deed are disfavored for three reasons. First, the dominant estate, in this case the Loomis parcel, does not have the opportunity to negotiate with the grantor on issues like location, width, extent of use, and allowable use. Second, the easement will fail to appear in the chain of title of the appurtenant parcel, which leaves bona-fide purchasers without notice that the land benefits from an easement. Finally, the conveyance to a stranger to the deed allows for no acceptance by the would-be dominant estate, raising questions of unexpected taxes, environmental concerns, and potential litigation. Knud E. Hermansen & Donald R. Richards, *Maine Roads and Easements*, 48 Me. L. Rev. 197, 261 (1996).

¶32 However, we have stated that in the proper case, where the intent of the grantor to reserve an interest in property to a stranger *is clearly shown*, we will give effect to the grantor's intent. *Medhus*, 184 Mont. at 444, 603 P.2d at 673 (citing *Cushman v. Davis* (1978), 80 Cal.App.3d 731, 735, 145 Cal.Rptr. 791, 793). In *Medhus*, we stated the test to determine intent:

> [C]ourts have considered the express language of the deed, testimony by grantors stating their intent, the fact that the grantor received less value for the property conveyed because of the existence of an easement, and, the sufficiency of the description of the location of the easement and whether or not the reservation names a dominant tenement. (Citations omitted).

184 Mont. at 444, 603 P.2d at 673.

¶33 The express reservation language of the deed provides:

> SUBJECT, however, to the following:

> (2) A reservation of a right-of-way and easement over and across the West thirty

(30) feet of the property conveyed for the purpose of establishing a public road and easement for utilities; . . .

This language neither specifically reserves the easement unto the Kolbs nor reserves an easement for the benefit of the Loomises. Ordinarily, an easement by reservation for the benefit of a third party will state the third party with particularity. We find it unlikely that a prudent landowner would reserve an easement for the benefit of the public at large. The burden of proof is on the Loomises, as strangers to the deed claiming an easement, to show Kolbs' intent to reserve an easement for their benefit. Here, the express language of the deed is ambiguous.

¶34 As to testimony regarding the grantor's intent, Mr. Kolb was called as a witness at trial and stated his intentions for the option property:

Q: If you had purchased that [option] property was it your intention to develop that or was it your intention to sell it as one tract?

Kolb: I didn't know how I was going to do it. And - because I had the possibility of an easement on the - on the easterly side I thought maybe I could sell half of it over there and then the westerly side was really a lot nicer land, I could maybe sell the westerly side in one block.

Q: Were you also giving consideration to selling the 358 acres in one transaction?

Kolb: Absolutely.

Q: And had you done that would that have affected your decision as to where to extend the road to provide access to that property?

Kolb: Yes.

. . .

Q: So it is fair to say that when certificate of survey 243270 was filed that you were attempting to depict the alternatives that would be available to you?

Kolb: Yes.

¶35 Subsequent acts of the parties, which tend to show the construction they themselves placed upon the writing, are also important in determining intent if such intent is not clearly expressed in the deed. *Doman v. Brogan* (1991), 405 Pa. Super 254, 265, 592 A.2d 104, 109. Kolbs' subsequent amendment of COS No. 243270 in COS No. 262891 in 1976, eliminating the disputed easement beyond the cul de sac, is further proof of the grantors' intent. When the Kolbs decided the option property would not be purchased from Chevallier, they eliminated the easement by reservation over the Luraski property in an amended certificate of survey.

¶36 On the final two *Medhus* factors, 1) whether the Kolbs received less value for the property conveyed because of the existence of the easement; and, 2) whether the reservation named a dominant tenement, no evidence was presented.

¶37 Because the Loomises were strangers to the deed and the documents of record did not create an easement by reservation in favor of the Loomises as a matter of law, we conclude that the District Court did not err.

## ISSUE 2

¶38 Did the District Court abuse its discretion when it refused to allow the Loomises to amend their claim and set forth a new theory of recovery?

¶39 In Plaintiffs' Pretrial Memorandum filed on March 28, 2000, Plaintiffs' Contention No. 2 is, "Chevallier's use of a road over the disputed easement created an implied easement for a public road across the west thirty (30) feet of the Luraski Property and the east thirty (30) feet of the Kolb property." At the pretrial conference, the District Court ruled the implied easement theory was precluded because it was not properly pled.

¶40 Plaintiffs claim the District Court abused its discretion because the Defendants were aware of the facts supporting the implied easement theory and would not have been substantially prejudiced or surprised at trial by the advancement of the theory.

¶41 A party may amend its pleadings pursuant to Rule 15(a) of the Montana Rules of Civil Procedure. A party may amend its pleading by leave of court and leave shall be freely given when justice so requires. Rule 15(a), M.R.Civ.P. It is an abuse of discretion for the district court to refuse to permit amendments to pleadings which are offered at a reasonable time and which should be made in the furtherance of justice. *Village Bank v.*

*Cloutier* (1991), 249 Mont. 25, 28, 813 P.2d 971, 973.

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave [to amend] sought should, as the rules require, be 'freely given'."

*Prentice Lumber Co. v. Hukill (1972), 161 Mont. 8, 17, 504 P.2d 277, 282.*

¶42 Here, the District Court rejected the Loomises attempt to argue the theory of implied easement at the final pretrial conference. A review of the procedural history is in order to determine whether the District Court abused its discretion. The Loomises filed their complaint on November 12, 1998. On June 30, 1999, the Loomises filed an Amended Complaint following the District Court's order which gave leave to amend. The Amended Complaint asserted the disputed easement was a public road, the disputed easement was created by express grant in the Kolb-Luraski deed, and the Loomises were entitled to an easement by necessity. After the Amended Complaint, no other motions to amend were made prior to the Plaintiffs' submission of their Pretrial Memorandum. On September 17, 1999, the District Court entered a Scheduling Order which set a non-jury trial for April 6, 2000, and set the final pretrial conference for March 28, 2000. All amendments to the pleadings were to be filed by September 30, 1999. On March 28, 2000, ten days before trial, the Loomises raised the theory of implied easement in their Pretrial Memorandum.

¶43 The district court is in the best position to supervise the day-to-day operations of the pretrial process. The attempt to add another cause of action at the pretrial conference through the Plaintiffs' Pretrial Memorandum was basically a motion to amend the pleadings. Although the District Court did not specifically state its reasoning for the denial, unnecessary delay to the proceedings or possible prejudice to the Defendants were apparent reasons. Easement by implication may be a subspecies of easement by necessity, but the elements differ, and the defenses would differ. Furthermore, discovery had been closed and no reason has been demonstrated why the Plaintiffs could not have raised the issue at an earlier time.

¶44 Therefore, we conclude that the District Court did not abuse its discretion.

ISSUE 3

¶45 Did the District Court err when it found that the Loomises failed to show strict necessity and concluded there was no easement by necessity?

¶46 We again are unclear as to what in particular the Loomises are challenging with regard to their easement by necessity theory: the District Court's conclusion that no easement by necessity arose at either severance or at present, the District Court's finding that the Loomises' current legal easement provides practical access to a public road, or both. Given the interrelated nature of the issues, we will discuss both.

¶47 The Loomises contend that the evidence at trial was sufficient to support a finding of an easement by necessity. Loomises contend that their parcel and the Kolbs' parcel were unified in title and that they now are left with no practical access to a public road. Furthermore, a public road crossing the Luraski parcel was available for access to the Loomis parcel at the time of severance, which was later destroyed by Luraski. Because the road existing at the time of severance was destroyed, the Loomis property had no practical access to a public road, and an easement by necessity arose. The Loomises also argue that their currently existing legal easement does not provide practical access.

¶48 The District Court concluded that the Loomises failed to establish an easement by necessity because at the time the Chevallier property was divided by sale to Kolb, Chevallier continued to have legal access to the option property by means other than the disputed easement. Furthermore, the District Court found that the Loomises failed to prove strict necessity, citing the Loomises own expert who testified that a road could be constructed at a cost of up to $12,000.

¶49 The two elements of an easement by necessity are unity of ownership and strict necessity. *Graham v. Mack* (1984), 216 Mont. 165, 175, 699 P.2d 590, 596. To meet the unity of ownership element, the tract over which the easement is claimed must have been owned at some time by the same person holding title to the land that the easement would benefit. *Schmid v. McDowell* (1982), 199 Mont. 233, 238, 649 P.2d 431, 433.

¶50 Strict necessity is defined by a lack of practical access to a public road for ingress and egress. *Kelly*, 279 Mont. at 243, 927 P.2d at 7; *Wagner v. Olenik* (1988), 234 Mont. 135, 138, 761 P.2d 822, 824. Strict necessity must exist both at the time the unified tracts are severed and the time of exercise of the easement. *Graham*, 216 Mont. at 175, 699 P.2d at 596; *Montana Wilderness Ass'n v. U.S. Forest Serv.* (D. Mont. 1980), 496 F.Supp 880, 885; *see generally*, 3 Powell on Real Property § 410 (1979).

¶51 The imposition of an easement by necessity will only arise in very specific circumstances, "where an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the lands of strangers, a way of necessity exists over the remaining lands of the grantor." *Graham*, 216 Mont. at 175, 699 P.2d at 596. The party seeking to establish an easement by necessity carries the burden to prove all elements required to establish that easement. 25 Am. Jur. 2d *Easement and Licenses in Real Property* § 134 (1996).

¶52 Here, the Loomises failed to satisfy the strict necessity element, both at the time of severance and at present. Unity of title existed when Chevallier owned all tracts of land currently owned by the Kolbs, Luraskis, and Loomises. However, when unity of title was severed upon the sale to Kolb, there was no necessity for an easement. The usual factual scenario giving rise to an easement by necessity occurs when a property is landlocked at severance and a way to and from the landlocked property is needed if that land is ever to be used. The option property retained by Chevallier at severance was not landlocked. Evidence at trial established that Chevallier continued to have access to their remaining property from the north via Applegate Drive, a route distinct from the disputed easement north of Buffalo Horn Drive. The Loomises contention that their particular parcel was landlocked at severance fails to recognize that it is the entire land purchase that must be landlocked, not a subsequent parcel. Therefore, the District Court's conclusion that the Loomises failed to established strict necessity was correct.

¶53 The Loomises also contend that they currently are left with no means of ingress and egress to their property. Even if we had concluded that there was strict necessity at severance giving rise to an easement by necessity, which could lie dormant through several conveyances before a subsequent grantee elects to exercise the easement, the Loomises have practical access to a public road from their property at present. Evidence at trial established the Loomises' possession of a sixty-foot legal easement running up a steep hill which could connect with Diamond Springs Road, a public road. During the testimony of Jack Black, the Loomises' excavating contractor, the following exchange took place:

> Q: And as I understand it the estimate that you provided to complete that road within the 60 foot easement is about ten or eleven thousand dollars. Is that right?
>
> Black: Ten or 12. Yes.
>
> Q: Is that about the right amount now?

Black: Yes.

Q: And if configured properly it could be within the 60 foot easement?

Black: I think so.

Q: And would provide access to the Loomis track on to Diamond Springs Road. Correct?

Black: Yes.

¶54 This Court's function on appeal is simply to determine whether there is substantial evidence to support the District Court's findings and whether they are clearly erroneous. *Graham*, 216 Mont. at 172, 699 P.2d at 595. The District Court listened to the evidence, and visited the disputed easement area. The only expert to testify on the feasibility to build a road over the legal easement was Jack Black. In addition, there was no evidence that the cost of construction of a road was out of proportion with the value of the land itself. Therefore, we conclude that the District Court was not clearly erroneous when it found that the Loomises have access to a public road and did not err when, on that basis, it concluded that there was no easement by necessity.

¶55 The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ JIM RICE