DA 12-0344

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 160

JANICE PENNINGTON,

        Plaintiff and Appellee,

    v.

FRANK E. FLAHERTY and THE ESTATE
OF MARGARET M. FLAHERTY,

        Defendants and Appellants,

    and

JOSEPH C. BUNDI and MELVIN E.
MATTINGLY,

        Defendants.

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and For the County of Teton, Cause No. DV 08-033
                Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Steven T. Potts, Steven T. Potts, PLLC, Great Falls, Montana

        For Appellee:

                Michael Talia, Mark Smith; Church, Harris, Johnson & Williams, P.C., Great
                Falls, Montana

                                Submitted on Briefs:  January 23, 2013
                                    Decided:  June 18, 2013

Filed:

                    _____
                              Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellants Frank E. Flaherty and the Estate of Margaret M. Flaherty (collectively Flaherty) appeal from an order entered by the Ninth Judicial District Court, Teton County that granted summary judgment in favor of Appellee Janice Pennington (Pennington) on Pennington's action to quiet title. We affirm.

¶2 We address the following issue on appeal:

¶3 *Whether the District Court properly granted summary judgment to Pennington?*

## BACKGROUND AND HISTORY

¶4 Bruce Nelson (Nelson) subdivided property on Gibson Reservoir in Teton County in the early 1970s. Nelson filed a plat of the subdivision on June 11, 1973. The plat depicts approximately 44 tracts. Nothing in the plat indicates any prohibition on the development of Pennington's tract, or any other tract. In fact, the plat places only one restriction on the development of any tract, including Pennington's: that no property owner could install a sanitary facility on the lot until the county sanitarian approves the facility.

¶5 Nelson filed a separate document entitled "Restrictions" with Teton County on June 12, 1974. The Restrictions provide that tracts 16 and 17, now owned by Pennington, would be "combined into usage" as one tract. The Restrictions further provide that the installation of any drain field on the combined parcel would require approval from the county sanitarian "prior to construction on the combined parcel of the said two tracts."

¶6 Flaherty claims that he purchased tract 18 from Nelson on June 21, 1973, ten days after Nelson had filed the plat. Flaherty waited until January 27, 1975, to record the deed.

2

Flaherty's deed declares that he takes title to tract 18 subject to "[r]estrictions dated June 4th, 1974 recorded June 12th 1974." The delayed filing of Flaherty's deed until January 27, 1975, seems the only explanation as to how Flaherty's deed could subject the purchase to the Restrictions that were recorded in 1974. It remains unanswered from the record, however, how Flaherty's deed, ostensibly executed on June 21, 1973, could refer explicitly to Restrictions filed on June 12, 1974.

¶7     Flaherty alleges that, around the time of conveyance of his property, Nelson guaranteed, orally and in writing, that he would not sell adjoining tracts 16 and 17. Flaherty claims that Nelson intended tracts 16 and 17 to serve as a buffer zone to provide more privacy to tract 18 and thereby enhance tract 18's appeal. Flaherty filed a notarized "Declaration of Interest" (Declaration) with the Teton County Clerk and Recorder four years later in 1977.

¶8     The Declaration takes the form of an affidavit of Frank Flaherty, dated March 28, 1977. Flaherty attested that Nelson "orally and in writing guaranteed that the sites now known as Tracts 16 and 17 of Gibson Lake Tracts East would not be sold." The Declaration further provides that the "covenant not to develop sites 16 and 17 was an integral part of my contract with Bruce Nelson." The Declaration further seeks "to put on actual and constructive notice any prospective purchase is subject to my interest." The Declaration concludes with a warning that Mr. Flaherty is "ready to sue to defend my interest in the aforementioned realty and have title quieted in my name."

¶9     Flaherty attached to the Declaration what he claims to be a sales brochure that Nelson allegedly had provided to him at the time of his purchase.  This brochure apparently constitutes the "in writing" guarantee from Nelson that he would not develop tracts 16 and 17.  The brochure provides that "only alternate sites being offered so that buyers will have utmost privacy."  Nelson's signature appears nowhere in the Declaration or on the attached brochure.

¶10    The brochure appears to depict the same property that encompasses Nelson's subdivision on Gibson Reservoir.  The plat depicted on the brochure, however, does not match the official subdivision plat approved by Teton County.  Among other differences, the brochure depicts more lots than depicted in the official plat.  The layout of the tracts depicted in the brochure also does not mirror the layout in the official plat.  The size and layout of many of the individual lots depicted in the brochure also differ from those lots depicted in the official plat.

¶11    Nelson sold tracts 16 and 17 in 2005 to Lee and Susan Carlbom (Carlboms).  The corporation warranty deed that effectuates the transfer contains no reference to any negative easement or servitude in favor of Flaherty.  This sale from Nelson to Carlboms seemingly conflicted with the claim in Flaherty's Declaration that Nelson promised Flaherty that tracts 16 and 17 "would not be sold."  Flaherty apparently took no action to make good on his threat "to sue to defend my interest in [tracts 16 and 17] and have title quieted in my name."

¶12    Pennington, in turn, purchased tracts 16 and 17 from Carlboms in 2008. Pennington's deed also contains no reference to any negative easement in favor of Flaherty.  Pennington

4

admittedly purchased the property with knowledge of Flaherty's Declaration. Pennington signed an addendum to the property's buy/sell agreement that acknowledged that "Frank Flaherty . . . claims that Bruce Nelson orally and in writing guaranteed Flaherty that [tracts 16 and 17] would never be sold or developed." Pennington accepted title to tracts 16 and 17 "as is" without any warranty of title.

¶13 Pennington filed a quiet title action to clear her title of any cloud that may have arisen as a result of Flaherty's Declaration. Flaherty defended on the basis that the Declaration entitled him to a negative easement or equitable servitude that would prevent Pennington from developing tracts 16 and 17. Flaherty filed a motion for summary judgment. Flaherty filed an affidavit in support of the motion that generally mirrors the 1977 Declaration. Flaherty again attested that Nelson "orally and in writing told us and guaranteed" that tracts 16 and 17 "would not be sold." Flaherty again attested that Nelson had "provided a brochure to me stating that only alternate sites were being offered for sale to ensure privacy for buyers such as my wife and I." Flaherty further attested, for the first time, that Nelson "promised us that Tracts 16 and 17 would not be developed."

¶14 The District Court denied Flaherty's motion for summary judgment. The court noted that Flaherty's motion relied heavily upon the alleged oral guarantee from Nelson and the brochure that Flaherty claims that Nelson had given to him. Flaherty sought to avoid hearsay problems associated with statements in the Declaration by relying on the transaction rule of § 26-1-103, MCA. Flaherty argued, in effect, that the brochure and Nelson's alleged oral guarantee induced Flaherty to purchase tract 18. The transaction rule allows presentation of

a declaration, act, or omission as part of a transaction. As the court noted, however, the transaction rule "does not create an exception to hearsay." Flaherty offered Nelson's alleged guarantee at the time of his purchase of tract 18, according to the District Court, for the truth of the matter asserted and no hearsay exception applies.

¶15 The court similarly excluded Flaherty's assertion that Nelson assured him that tracts 16 and 17 "never would be developed." These rulings left Flaherty only with his statements that Nelson had given him the brochure and that he had spent time and money on the development of tract 18. These final two items, standing alone, left unresolved numerous genuine issues of material fact and the District Court accordingly denied Flaherty's motion for summary judgment.

¶16 Pennington later filed her own motion for summary judgment. The District Court determined that the briefing "does not show any material issue of fact, even when viewed in the light most favorable to [Flaherty], the brochure and declaration of interest do not create a restriction on development." The court further determined that the "subdivision plat and Restrictions on Tracts in Gibson Lake Tracts are the only restrictions on use of the property." Flaherty appeals.

## STANDARD OF REVIEW

¶17 We review de novo a district court's grant or denial of a motion for summary judgment. *Sayers v. Choteau Co.*, 2013 MT 45, ¶ 21, 369 Mont. 98, 297 P.3d 312. We apply the same standards used by the district court under M. R. Civ. P. 56(c). *Sayers*, ¶ 21.

6

## DISCUSSION

¶18 *Whether the District Court properly granted summary judgment to Pennington?*

¶19 Pennington established in the District Court that no documents related to the plat, in Flaherty's chain of title, or in her chain of title, imposed any restrictions on her use of tracts 16 and 17. Nothing in the subdivision plat indicates any relevant prohibition on the development of Pennington's tract, or any other tract. The Restrictions contemplate development of Pennington's property as evidenced by the directive that tracts 16 and 17 would be "combined into usage" as one tract on which no drain field could be installed on the combined parcel without approval from the county sanitarian "prior to construction on the combined parcel of the said two tracts."

¶20 Nothing in the deed that transferred tract 18 from Nelson to Flaherty contains any mention of other limitations or prohibitions on development of Pennington's property. Similarly, nothing in the deed that transferred tracts 16 and 17 from Nelson to Carlboms in 2005, or from Carlboms to Pennington in 2008, contained any mention of limitations or prohibitions on development of Pennington's property. The lack of any prohibitions or limitations on development in either the written conveyance from Nelson to Flaherty, or Nelson to Pennington's predecessor in interest, forced Flaherty to rely entirely on the existence of implied restrictions in order to defeat Pennington's claim for summary judgment. Flaherty had to establish his implied easement claim through admissible evidence. *See N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 40, 368 Mont. 330, 296 P.3d 450.

7

¶21 An implied restriction can be enforced as an equitable servitude. *See Goeres v. Lindey's, Inc.*, 190 Mont. 172, 177-78, 619 P.2d 1194, 1197-98 (1980). Principles of equity control the application of implied restrictions. *Goeres*, 190 Mont. at 177-78, 619 P.2d at 1197-98. We must consider with "*extreme* caution" any implied negative easements as to a particular lot, however, due to the fact that an implied negative easement deprives people the use of their property. *Goeres*, 190 Mont. at 177, 619 P.2d at 1197 (emphasis in original). The source of the implied restrictions alleged by Flaherty take two forms.

¶22 He first contends that the brochure restricts the development of Pennington's property. Flaherty claims that Nelson gave him the brochure when Flaherty was considering whether to purchase tract 18. Flaherty cites the decision in *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291 (Va. 1999), to support his claim that the brochure could serve to establish a binding servitude.

¶23 In *Prospect Development*, a buyer sought to purchase property adjacent to a lot designated as "preserved land" on the recorded subdivision plat. *Prospect Dev.*, 515 S.E.2d at 294. The developer made multiple representations that no home ever could be built on the "preserved land." The buyer paid a premium of $15,000 to own property next to undeveloped land. *Prospect Dev.*, 515 S.E.2d at 295. The developer later submitted a "resubdivision plat" to the county for approval to re-subdivide the development so that a house could be built on the "preserved land." *Prospect Dev.*, 515 S.E.2d at 295.

¶24 Flaherty cannot allege that any recorded document misled him. Neither the plat nor the Restrictions contain any applicable constraints on development of Pennington's property.

8

Flaherty presented no evidence that he paid a premium for tract 18 to reflect the enhanced desirability provided by the buffer zone. *Cf. Prospect Dev.*, 515 S.E.2d at 295. The brochure does not provide that Pennington's property specifically would not be developed. The brochure simply states that "only alternate sites being offered so that buyers will have utmost privacy." By contrast, the evidence in *Prospect Development* demonstrated that the developer had made "numerous representations" to prospective buyers that the tract labeled "preserved land" never would be developed. *Prospect Dev.*, 515 S.E.2d at 299.

¶25 Pennington further argues that Flaherty failed to authenticate the brochure. The lack of authentication proves problematic for Flaherty as the brochure differs in several important respects from the plat, as discussed by the District Court. Flaherty contends that the brochure qualifies for the hearsay exception provided under M. R. Evid. 803(16), for an ancient document. The safe harbor from the hearsay ban under M. R. Evid. 803(16), specifically requires, however, that the party seeking to admit a purported ancient document must establish its "authenticity." *See also King v. Schultz*, 141 Mont. 94, 98, 375 P.2d 108, 110 (1962) (discussing limitations on the admissibility of ancient documents pursuant to the hearsay exception). The District Court determined that discrepancies between the recorded plat and the brochure raise doubts as to the brochure's authenticity. The court noted that the brochure "does not show the lots configured in the same way as they are shown on the final plat on record."

¶26 M. R. Evid. 901(b)(8), the ancient document authentication provision, likewise, offers no avenue to authenticate the brochure. M. R. Evid. 901(b)(8)(A) requires that the document

9

be "in such condition as to create no suspicion concerning its authenticity." *See PPL Mont., LLC v. State*, 2010 MT 64, ¶ 94, 355 Mont. 402, 229 P.3d 421 (overruled on other grounds by *PPL Mont. LLC v. State*, 132 S. Ct. 1215 (2011)). The facts that Nelson nowhere signed the brochure, that the brochure simply provides that "only alternate sites being offered" without specifying which tracts qualify as "alternative," and the difference in the configuration and number of lots on the brochure and the recorded plat, raise doubts concerning its authenticity.

¶27 More importantly, Flaherty produced no evidence, aside from his own affidavit, that Nelson ever used the brochure to market lots in the subdivision to Flaherty or any other buyer or potential buyer. Flaherty's affidavit in support of his motion for summary judgment relies upon his recollection of a hearsay statement that Nelson assured him that tracts 16 and 17 "would not be sold." Flaherty makes no effort to reconcile this claim with the Restrictions referenced in his deed that tracts 16 and 17 would be combined into a single parcel and that the county sanitarian would have to approve the drain field design for this combined tract before any construction could take place on the combined tract.

¶28 The District Court also rejected Flaherty's claim that Nelson's alleged oral assurance constituted part of the transaction through which he purchased tract 18 and somehow escapes the hearsay ban. Flaherty sought to admit Nelson's alleged oral statements for the truth of the matter asserted – that Nelson promised Flaherty that tracts 16 and 17 never would be sold – and thus M. R. Evid. 801 would bar its admission. No exception pursuant to M. R. Evid. 803 would allow Nelson's alleged oral statements to be admitted. As we noted in *Ternes v.*

10

*State Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 24, 361 Mont. 129, 257 P.3d 352, hearsay "cannot be used to defeat summary judgment."

¶29 Flaherty next argues that the Declaration restricts Pennington's use of her property. Flaherty argues that Nelson's assurances amounted to an "integral part" of his negotiations with Nelson, and, thus, the statements to that effect in the Declaration qualify as statements in documents affecting an interest in property. M. R. Evid. 803(15), provides a specific hearsay exception for statements in documents "affecting an interest in property."

¶30 Flaherty ignores the fact, however, that the limited hearsay exception in M. R. Evid. 803(15), applies "unless dealings with the property since the document was made have been inconsistent with the truth of the statement." Flaherty produced and filed the Declaration in 1977. The Declaration provides that Nelson guaranteed to Flaherty that tracts 16 and 17 "would not be sold." Nelson sold tracts 16 and 17 to Carlboms on May 21, 2005. The buyer's recording of the deed provided notice to Flaherty. More importantly, the Declaration simply documents Nelson's alleged oral statements in an attempt to prove the truth of these alleged oral statements. M. R. Evid. 801 would bar the admission of the alleged oral statements and no exception pursuant to M. R. Evid. 803 would allow Nelson's alleged oral statement to be admitted. *See Ternes*, ¶ 24.

¶31 The 2005 sale proves inconsistent with the statement in the Declaration that Nelson guaranteed to Flaherty that tracts 16 and 17 "would not be sold." Nothing in the record indicates that Flaherty raised any objection to the 2005 sale. The inconsistent treatment of tracts 16 and 17 since the time that Flaherty filed his Declaration in 1977 undermines the

11

reliability of the statement in the Declaration and moves it outside the scope of the limited hearsay exception contained in M. R. Evid. 803(15). This inconsistent treatment further highlights the "*extreme* caution" with which we evaluate claims of implied equitable servitudes. *Goeres*, 190 Mont. at 177, 619 P.2d at 1197 (emphasis in original).

¶32 Pennington acknowledges that she had notice of Flaherty's 1977 Declaration when she purchased her property. Flaherty argues that Pennington's knowledge of the Declaration, on its own, defeats her claim for summary judgment. A subsequent purchaser's knowledge of an implied restriction admittedly represents a key element in the enforceability of an implied restriction. *Goeres*, 190 Mont. at 177-78, 619 P.2d at 1197-98; *cf. Rigney v. Swingley*, 112 Mont. 104, 109, 113 P.2d 344, 347 (1941) (holding that a mortgage by one not in the chain of title though recorded "is not constructive notice to subsequent purchasers") (citations omitted).

¶33 The Court in *Goeres*, 190 Mont. at 177-78, 619 P.2d at 1197-98, rejected as inequitable an attempt by neighboring property owners to enforce a restriction on commercial use of lots in a subdivision on Seeley Lake. The buyer's deed and chain of title contained no restrictions on commercial uses. The contesting property owners argued, however, that an implied covenant prevented the buyer from using the property for commercial purposes. The deed for at least one property in the subdivision contained a restrictive covenant that asserted that the buyer's property was subject to a restrictive covenant. The buyer's title search had revealed the covenant in the restricted property's deed. The presence of the restrictive covenant in the deed of a single property in the

12

subdivision failed to place the buyer on notice that the restrictions in that deed applied also to the buyer's property. *Goeres*, 190 Mont. at 178, 619 P.2d at 1194.

¶34    Flaherty cannot establish even the attenuated notice deemed inequitable in *Goeres*. Nothing in the record indicates that Flaherty's chain of title, Pennington's chain of title, or the chain of title of any purchaser of a lot at Gibson Reservoir, contains reference to any restrictions on Pennington's use of tracts 16 and 17. Flaherty instead argues that his own Declaration, filed in 1977, put all potential purchasers of tracts 16 and 17 on notice of his interest. Flaherty's Declaration admittedly provided notice to Pennington of his claim as evidenced by the addendum to her 2008 buy/sell agreement. The mere fact that Pennington had notice of Flaherty's putative claim fails, however, to validate automatically Flaherty's claim on tracts 16 and 17. *See Loomis v. Luraski*, 2001 MT 223, 306 Mont. 478, 36 P.3d 862 (rejecting attempt by property owner to establish easement on adjacent property for the property owner's benefit when the claimed easement reservation was made outside of the property owner's chain of title).

¶35    The facts of Flaherty's claim also contrast sharply with *Thisted v. Country Club Tower Corp.*, 146 Mont. 87, 405 P.2d 432 (1965) (overruled on other grounds by *Gray v. City of Billings*, 213 Mont. 6, 689 P.2d 268 (1984)). The developer of a high-rise residential condominium provided prospective purchasers with a detailed brochure that outlined development restrictions on commercial uses. The contracts signed by these residential purchasers contained these same restrictions on commercial uses. *Thisted*, 146 Mont. at 89-90, 405 P.2d at 433. The developer later tried to change significantly the character of some

floors of the building from residential units to commercial units, despite contracts already in place. *Thisted*, 146 Mont. at 93, 405 P.2d at 435. The record contains no evidence that Flaherty, Pennington, or any purchaser of a lot at Gibson Reservoir, possess any contract that contains any restrictions on the development of Pennington's property.

¶36 Flaherty's claim of equitable estoppel suffers from similar deficiencies. Equitable estoppel requires the moving party to establish six separate elements through clear and convincing evidence. *Avanta Fed. Credit Union v. Shupak*, 2009 MT 458, ¶ 42, 354 Mont. 372, 223 P.3d 863. Flaherty stumbles on the first element: the existence of conduct, acts, language, or silence amounting to a representation or a concealment of a material fact. *Avanta Fed. Credit Union*, ¶ 42.

¶37 Nelson filed the Restrictions associated with his plat for the Gibson Reservoir property with Teton County on June 12, 1974. The Restrictions explain that tracts 16 and 17 would be "combined into usage" as one tract with the specific understanding that the installation of any drain field on the combined parcel would require approval from the county sanitarian "prior to construction on the combined parcel of the said two tracts." The "said two tracts," of course, are now Pennington's property. The Restrictions contemplate development of the combined parcels now owned by Pennington. Flaherty's own deed, apparently executed on June 21, 1973, refers explicitly to the Restrictions that Nelson filed on June 12, 1974. Flaherty could establish no misrepresentation or concealment of a material fact on the part of Nelson under these circumstances. *Avanta Fed. Credit Union*, ¶ 42.

14

¶38     Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE